The **BLACKWELL COLLEGE OF BUSINESS**, Appellant,

v.

The **ATTORNEY GENERAL** of the United States.

No. 24801.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1971.

Decided Sept. 10, 1971.

Motion for Leave to File Petition for Rehearing Out of Time Denied March 6, 1972.

Robb, Circuit Judge, dissented and filed opinion.

Mr. David Carliner, and Miss Suzanna Blackwell, Washington, D. C., for appellant.

Mr. George W. Masterton, Atty., Department of Justice, with whom Messrs.

Thomas A. Flannery, U. S. Atty., and Paul C. Summitt, Atty., Department of Justice, were on the brief, for appellee. Mr. Gil Zimmerman, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBB, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellant sued in the District Court, seeking relief for procedural deficiencies in proceedings before the Immigration and Naturalization Service (INS),[1] having the object of overturning an INS decision withdrawing appellant's status as an approved school for attendance by nonimmigrant alien students under the provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(F). On appellee's motion to dismiss the complaint and cross motions of the parties for summary judgment the District Court granted appellee's motion for summary judgment. Appellant raises on appeal the question whether its status has been revoked consistently with the standards of procedural due process of law. We reverse, without prejudice to renewal of proceedings which fall within guidelines which emerge from our decision.

The College had been approved since 1953 as an institution of learning for attendance by nonimmigrant students,[2] under 8 U.S.C. § 1101(a)(15)(F), which refers in the following terms to such students and institutions:

* * * a bona fide student qualified to pursue a full course of study and who seeks to enter the United States temporarily and solely for the purpose of pursuing such a course of study at an established institution of learning or other recognized place of study in the United States, particularly de-

signed [*sic?* designated] by him and approved by the Attorney General after consultation with the Office of Education of the United States, which institution or place of study shall have agreed to report to the Attorney General the termination of attendance of each nonimmigrant student, and if any such institution of learning or place of study fails to make reports promptly the approval shall be withdrawn * * *.

The applicable regulations include 8 C.F.R. § 214.3(*g*) and 8 C.F.R. § 214.3(*j*). The former provides that the approved school shall promptly report to the INS any nomimmigrant student "who fails to carry a full course of study, fails to attend classes to the extent normally required, or terminates his attendance at the institution."[3] The latter provides that approval shall be withdrawn for failure to submit the reports required by paragraph (*g*). The withdrawal proceedings against appellant were instituted under the latter regulation and are now more fully described.

On December 1, 1969, a District Director of the INS, on the basis of an investigation which had been in part *ex parte*, informed the school by letter of the intention of the INS to withdraw the school's approved status because of several claimed failures to comply with the reporting requirements of the regulations. The school was afforded 30 days within which to submit written representations under oath, supported by documentary evidence, giving reasons to rebut withdrawal of approval. The school responded by denying the allegations under oath, though without documentary support. There followed an interview of appellant's president with three officials of the INS, at which the president admitted some failures in reporting but took the position that none was willful,[4] and sub-

---

1. The INS is in the Department of Justice under the Attorney General of the United States, the appellee.

2. The College has developed and maintained facilities and a faculty to educate nonimmigrant students.

3. The report shall be on a specified form known as Form I–20B.

4. It does not appear that the Director relied upon this admission when the Director later decided to withdraw the appellant's approved status.

mitted a list of 203 students for whom she claimed reports had been submitted. The INS reviewed the files of 75 to 100 students listed and, according to a memorandum of the reviewing officer who was an INS examiner present at the interview with the president, violations in reporting were reflected in 26 instances. The District Director thereafter, on January 22, 1970, without further opportunity of the school to rebut or explain the evidence, notified appellant that approval of the school was being withdrawn, with its right of appeal to the Regional Commissioner.

Appellant filed notice of appeal with the Regional Commissioner and urged that the decision to withdraw approval had been made inconsistently with due process of law, that is, that the school had not been afforded a hearing at which it could orally present evidence, that counsel had not been allowed to appear at the proceedings, including the interview, that it had not been afforded an opportunity to examine adverse evidence, and that it had been denied the right to confront and cross-examine adverse witnesses. Appellant further alleged, though without supporting evidence, that it had complied with the reporting requirements of the regulations.[5] The Regional Commissioner on April 29, 1970, entered an order remanding the case to the District Director "for reopening to enable the appellant to appear with counsel for an interview, inspection of the record of proceeding, further representation, and the District Director's reconsideration."

Prior to compliance with the terms of the remand, the District Director, on June 15, 1970, advised appellant that "additional evidence has been compiled in support of the decision to withdraw Service approval" and that appellant

could examine the evidence; and on the same date the INS examiner involved in the original decision filed a memorandum stating that "[t]he College and its attorneys will be allowed to review the additional evidence of record, and unless evidence is submitted to overcome the foregoing, our decision to withdraw will stand." This additional evidence grew out of a series of interviews by the INS of former students of the school, conducted both prior to and after the decision of the Regional Commissioner to remand the case, and at which sworn statements were obtained in the absence of counsel for appellant and without according appellant an opportunity to question the students. In addition, the INS had examined 90 files additional to those previously examined, concluding that 63 violations appeared from these files, again without affording appellant any participation.

Appellant filed suit in the District Court on July 1, 1970. After the suit was filed, and in compliance with the remand of the Regional Commissioner, the District Director on July 10, 1970, in addition to the advice previously given— that appellant could examine additional evidence which had been compiled—advised appellant it could appear on or before July 27, 1970, for an interview, with counsel, and could submit additional evidence and make further representations. Appellant did not take advantage of this opportunity and on August 13, 1970, the District Director notified appellant of his decision to withdraw the school's approved status. The case was certified to the Regional Commissioner for review where it presumably remains pending the outcome of this appeal.

**I**

 The record contains evidence that appellant failed to comply with its

5. Appellant also submitted a letter it had received from the American Embassy in Nigeria, dated March 16, 1970, which indicated that the INS had advised the Embassy "that student visas be withheld from prospective Blackwell students until a final decision had been made on the

school's status because of certain irregularities." Pending this appeal we stayed the action of the INS and directed that appellee require that the American Embassy in Nigeria, and other foreign officials who might have been similarly notified, be advised of our stay.

reporting obligations. To affirm for this reason, however, would overlook substantial procedural defects in the manner in which the record was compiled. It would also overlook the possibility that had appropriate procedures been followed, action less drastic than total withdrawal of approval by the District Director might have resulted. The wide latitude and discretion inevitably given to executive officials and administrative agencies in regard to enforcement policy puts upon them a corresponding obligation to institute and abide by procedures that give affected persons a meaningful opportunity, before adverse decisions are crystallized, to make an appeal to their discretion. While 8 U.S.C. § 1101(a) (15) (F) plainly contemplates that approval shall be withdrawn "if any such institution of learning or place of study fails to make reports promptly," this does not mandate withdrawal for any and all delicts.[6] There is discretion inherent in the word "promptly," and this is a point that lurks in the entire proceeding without clarification. There is discretion as to the concrete standard derived from the statute; as to whether the colleges had reasonable notice of the standard, either by fair implication from the statutory language, or some official specification; and as to what deviations or tolerances might be deemed in a zone sufficiently reasonable to avoid the sword of withdrawal. Similarly there is discretion as to the number or proportion of significantly late reports that warrants withdrawal of approval. Finally there is discretion, as will be amplified in the following discussion, as to the kind of opportunity that will be allowed for correction of practices, at least where there is no determination that these are deceitful rather than careless.

■ The case falls within no familiar pattern, but does come within the general ambit of recent decisions of the Supreme Court, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), from which it seems clear Blackwell was entitled to procedures conformable with due process of law. *See also* Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Its approved status was a valuable asset in the nature of a license which the governmental proceedings threatened to terminate.

In *Goldberg* the problem concerned initial termination, after *ex parte* investigation, of welfare benefits without a prior fair hearing. The Court held that while the pretermination hearing required by the decision "need not take the form of a judicial or quasi-judicial trial," the recipient of benefits must have, among other rudimentary aspects of due process, "an effective opportunity to defendant by confronting any adverse witnesses and by presenting his own arguments and evidence orally." 397 U.S. at 266, 268, 90 S.Ct. at 1020. In *Perales*, however, involving a federal statutory claim of disability benefits, which turned primarily upon medical evidence, the confrontation and cross-examination held required by due process of law in *Goldberg* were not carried into the Court's decision.

■ As the above cases make clear, in this respect breaking no new ground, the requirements of due process vary according to the nature of the case, the question of due process being influenced by the relative importance of the governmental and private interests. In Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961), quoted in both *Goldberg* and *Perales*, the Court said, "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of

---

6. While the statute states that approval "shall" be withdrawn for failure to submit the required reports, we are unwilling to construe this language as mandatory in the absence of an administrative practice or ruling that it deprives the INS of all discretion, especially in light of the provisions of 5 U.S.C. § 558 discussed in Part II of this opinion.

the government function involved as well as of the private interest that has been affected by governmental action." *See also* Bell v. Burson, *supra*, 402 U.S. at 540, 91 S.Ct. at 1590, where the court noted that "[a] procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case."

In our case the governmental and private interests merge in at least one respect. The policy behind the statute under which nonimmigrant alien students may come to the United States to study can be fulfilled only if there are schools where they can pursue their studies. The interests of the United States and the schools separate, however, when the integrity of the immigration laws, and the integrity of the manner in which a particular policy is carried out, may be undermined by the possible use of the schools as a means of evading the usual immigration requirements. In fulfilling that policy we do not understand appellee to question that the government's interests, compared with the schools', authorizes withdrawal of approval only in accordance with procedural due process. Appellee says, and we agree, that the situation requires an appraisal of what constitutes due process in these withdrawal proceedings.

Bearing on this determination, in contrast with the situation presented in Goldberg v. Kelly, and Richardson v. Perales, and perhaps to a lesser degree in Bell v. Burson, is the fact that withdrawal proceedings are not part of a massive administrative undertaking. The schools are not numerous like, for example, claimants to welfare benefits; there is no "sheer magnitude of [the] administrative burden." Richardson v. Perales, *supra*, 402 U.S. at 406, 91 S.Ct. 1420, 28 L.Ed.2d 842. Moreover, there would seem to be no such reason as there was in *Perales* to permit an adverse decision to rest upon reports and affidavits of experts. Evidence is more credible in the form of medical reports of doctors than is hearsay evidence of students or others in matters such as are in-

volved in the present case. On the other hand, the nature of the case, involving the failure of the school to submit required reports, would not seem to require that all evidence relied upon be that of live witnesses who could be confronted and cross-examined.

## II

The INS, under the supervision of appellee in the Department of Justice, is an "agency" within the terms of the Administrative Procedure Act. 5 U.S.C. § 551(1). *Cf.* Soucie v. David, 145 U.S. App.D.C. 144, 448 F.2d 1067 (1971). In one respect at least the Administrative Procedure Act applies to the proceedings in this litigation. "License" is defined in the Act to include the whole or part of an agency permit or approval, while "licensing" is defined to include agency process respecting the grant, revocation, or withdrawal of a license. 5 U.S.C. §§ 551(8), 551(9). Under Section 558(c) it is then provided:

> * * * Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—
>
> (1) notice by the agency in writing of the facts or conduct which may warrant the action; and
>
> (2) opportunity to demonstrate or achieve compliance with all lawful requirements.

There has been no finding of willfulness or other basis for noncompliance by the INS with the above provision. Nevertheless, the original action of the INS was the initiation of a proceeding to withdraw the school's approved status rather than the giving of "notice * * in writing" and "opportunity to demonstrate or achieve compliance with all lawful requirements." The Administrative Procedure Act seems clearly to contemplate that when there is a withdrawal sanction possibly to be imposed, one hold-

ing a license—here "approval" of its status—be afforded an opportunity to put its house in lawful order before more formal agency proceedings are undertaken.[7]

We need not rely alone, however, upon the failure of the INS to comply with the above provisions of the Administrative Procedure Act, for we find that the proceedings as they progressed did not in other respects supply procedural due process.[8] As provided in 8 C.F.R. § 214.3(j), appellant, after receipt of "a notice of intention to withdraw the approval," was allowed to submit "written representations under oath supported by documentary evidence setting forth reasons why the approval should not be withdrawn * * * [and to have] an authorized representative of the school appear for [an] interview before an immigration officer. * * * " Thus, appellant was required in this restricted manner to refute a case already built up essentially *ex parte*, and to do so, prior to the remand of the Regional Commissioner, without the assistance of counsel at the interview. When subsequent to the interview the INS reviewed the files of 75 to 100 of the 203 students on the list furnished by appellant, and drew conclusions from them, appellant was provided no meaningful hearing with an opportunity to refute the INS's conclusions. It seems, indeed, that appellant did not know just which failures to file reports had been relied upon. Moreover, the District Director, who on the basis of the original investigation had notified the school of the INS's intention to withdraw approval, decided the case, giving rise to appellant's claim under the principle stated in Goldberg v. Kelly, *supra*, 397 U.S. at 271, 90 S.Ct. at 1022, that "an impartial decision maker is essential" to due process of law. Though the Court said that "prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker," it also said that "[h]e should not, however, have participated in making the determination under review." *Id.* Perhaps this was not fatal to the procedure at this stage, in light of the totality of the circumstances, *see* Richardson v. Perales, *supra*, 402 U.S. at 410, 91 S.Ct. 1420, 28 L.Ed.2d 842, but it is an element which added a cloud to the procedure.[9]

The formless—and essentially *ex parte* —character of the proceedings did not improve when the case was remanded by the. Regional Commissioner. The District Director continued as the decision maker, notwithstanding he had previously made a decision against the school and the procedures underlying that decision were inadequate.[10] Moreover, in the compilation of additional evidence by the INS, which included examining additional student files and interviewing students after which sworn statements were obtained, there was no participation afforded appellant with or without counsel. Thus there was no hearing in any real sense, only an interview afforded on re-

7. Notwithstanding indications on the record of informal warnings given the school by the INS, we do not think these complied with 5 U.S.C. § 558(c). In any event we do not rely alone on this failure of compliance by the INS as a basis for decision, and if further proceedings against the school are contemplated, compliance with Section 558(c) will be an easy matter.

8. The Regional Commissioner himself did not approve all the procedural steps by which the District Director had reached his decision to withdraw appellant's approved status. While we cannot say the Commissioner found a lack of procedural due process, he did at least deem the school to be entitled to enhanced procedural rights over those previously accorded.

9. In this respect the character of the overall procedure reviewed in *Perales*, "designed, and working well, for a governmental structure of great and growing complexity," 402 U.S. at 410, 91 S.Ct. at 1432 might distinguish the situation at hand.

10. In this regard it should be noted that other persons involved in the decision with the District Director, such as the INS examiner, participated in the investigation of the school.

mand with an opportunity to examine the record of the proceedings consisting primarily of affidavits of former students. The proceedings, in essence, were formless and uncharted.

We accordingly conclude that withdrawal of approval in the procedural manner described falls short of meeting the requirements of due process of law in the context of the nature of the interests of the parties involved. The interests of the government, set forth below,[11] simply are not so urgent, *cf.* Cafeteria & Restaurant Workers Union v. McElroy, *supra,* that the private interest of the school in protecting its license should not be accorded procedures consistent with due process. *Cf.* Goldberg v. Kelly, *supra.*

### III

We also hold that resort to the court in the circumstances was not premature. The Regional Commissioner did not upset the withdrawal decision. It remained in effect, with the burden cast upon appellant of obtaining a reversal. On the remand appellant could appear with counsel for an "interview," inspect the record, and make "further representation."[12] This did not, however, supply the procedure we have found missing. The fact is, moreover, that after the suit was filed the District Director, on July 10, 1970, conformably to the remand, informed appellant that it could appear with counsel for an interview, submit additional evidence, and make further representations, thus indicating the Director's interpretation of the limited character of the remand, including the permitted "further representation." And after the remand order, but before counsel was afforded any representation under the terms of the order, the INS *ex parte* compiled additional data based on interviews with students, and thus of a hearsay character.

Neither the statute relating to the schools, nor the applicable regulations, sets forth any clear-cut administrative procedure for withdrawal of a school's approved status. The provisions of 8 C.F.R. § 214.3(j),[13] while they may serve a useful purpose, are not an adequate delineation of a procedure equal to the task of resolving a contest over termination of a valuable license status. Nothing comparable to a hearing under the Administrative Procedure Act is provided. *See* Richardson v. Perales, *supra,* 402 U.S. at 409, 91 S.Ct. 1420, 28 L.Ed.2d 842. Congress has prescribed no administrative procedure in the statute, such as was the basis for the Court's decision in W. E. B. DuBois Clubs v. Clark, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967); and there is no "prescribed procedure" otherwise to be followed, such as the Court referred to in Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 773–774, 67 S.Ct. 1493, 91 L. Ed. 1796 (1947). In addition, we find no provision in the statute defining the scope of review by the Regional Commissioner in case of appeal.[14] In this situation we think the remand, as understandably construed by the District Director, was too circumscribed to afford the fair hearing to which appellant was entitled.

---

11. These interests, as alleged by appellee, are the protection of the interests of bona fide nonimmigrant students, proper enforcement of the immigration laws, and the promotion of better relations with other countries, which can just as easily be protected by better procedures.

12. The "further representation" presumably is that referred to in 8 C.F.R. § 214.3(j), *i. e.,* "written representations under oath supported by documentary evidence setting forth reasons why the approval should not be withdrawn."

13. 8 C.F.R. § 214.3(j) permits the written representations referred to in footnote 12 *supra,* after which there may be an interview before an immigration officer. No other regulation provides guidance to the INS.

14. We are referred to the provisions of 8 C.F.R. § 103.1(e) (10) which in turn make reference to 8 C.F.R. § 214.3, and which provide merely that the school shall be notified of the reasons for a decision and of its right to appeal in accordance with the general provisions of Part 103 of the chapter.

## IV

◼ While we think the withdrawal of approval cannot stand, it would not do for the court simply to order that it be set aside on procedural grounds without supplying guidelines. In the first place we think 5 U.S.C. § 558(c) applicable and should be followed. Should the INS go further, the notice of intention to withdraw approval under 8 C.F.R. § 214.3(j) should specify in reasonable detail the particular instances of failure to report upon which the INS relies. The documentary evidence the school is permitted to submit within 30 days can then be directed to the specific grounds alleged. In addition, if requested the school should be granted a hearing before an official other than the one upon whose investigation the INS has relied for initiating its withdrawal proceedings.[15] If the evidence against the school is based upon authentic records, findings may be based thereon, unless the purport of the evidence is denied, in which event the school may be required to support its denial by authentic records or live testimony. If, however, the data presented in support of noncompliance is hearsay evidence the college, if it denies the truth of the evidence, shall have opportunity, if it so desires, to confront and cross-examine the person or persons who supplied the evidence, unless the particular hearsay evidence is appropriate for consideration under some accepted exception to the hearsay rule. In all the proceedings the school, of course, shall be entitled to representation and participation by counsel. The factual decision of the INS shall be based on a record thus compiled; and the record shall be preserved in a manner to enable review of the decision.

We have discussed the components of procedure in the interest of justice to assure that in further proceedings involving petitioner and any proceedings involving another school, the agency will proceed on the basis of a structure of regulations, or at least instructions available to the persons affected, that will be responsive to the reasonable concerns of the schools involved. We should add that we do not mean that each and every procedural item discussed constitutes by itself a prerequisite of procedural due process. Rather our conclusion of unfairness relates to the totality of the procedure. There was a carelessness in executive procedure that requires correction as surely as any carelessness in school reporting. The ultimate requirement is a procedure that permits a meaningful opportunity to test and offer facts, present perspective, and invoke official discretion. This was not provided by the INS repair of makeshift procedure that remanded the matter for decision to an official who had not only already crystallized a decision but had done so in a context marred by procedural shortcomings.

Reversed and remanded for entry of judgment granting appellant's motion for summary judgment.

ROBB, Circuit Judge (dissenting):

The question for decision is whether the administrative proceedings that resulted in withdrawal of approval of the Blackwell College satisfied the requirements of procedural due process. In short, were they fundamentally fair? I think they were, and accordingly I would affirm the judgment of the district court.

The administrative record (A.R.) is before us. It was open for inspection by the college during the administrative proceedings. This record discloses that in October and November 1969 an INS investigator made five visits to the college, examined its records, and interviewed school officials, including Dr. Suzanna Blackwell, President, and Mrs. Greene, the Registrar. This investigation was in accordance with regulations. 8 C.F.R. § 214.3(h) (1971).[1] It revealed

---

15. We suggest this as not an absolute requirement but as a means of avoiding controversy over due process of law.

1. 8 C.F.R. § 214.3(h) (1971) provides:
 *Review of school approvals.* The district director shall review from time

that there were about 120 alien students enrolled at the institution but that only about 38 of them actually attended classes. Of the 38 only about 10 attended class regularly; the others attended only 4 or 5 times a month. These facts appeared in the permanent records maintained by the school. Although requested to do so, Mrs. Greene was unable to furnish any evidence that proper reports to the INS had been made in the cases of students who did not attend class regularly. The findings of the investigator were set out in a report which appears in the file. (A.R. 190).

As a result of the investigation a district director of the INS on December 1, 1969, wrote to Dr. Blackwell as follows:

\*　\*　\*　\*　\*　\*

Recent visits to your school by an officer of this Service, which included interviews of you and your staff, revealed that classroom attendance by such aliens is minimal, and that the majority of these students have never actually attended class at all, and that less than 10% of them attend classes regularly. There is no evidence of record that this Service has been kept informed of this lack of attendance.

Title 8, Code of Federal Regulations, Part 214.3(j) states in pertinent part

that "the approval of a school shall be withdrawn if it is no longer entitled to approval . . . for any reason including, but not limited to, the following: '(1) failure to submit reports required by paragraph (g) of this section; . . . .' Paragraph (g) states in part: 'An immediate report shall also be made in the case of each nonimmigrant student who fails to carry a full course of study, fails to attend classes to the extent normally required, or terminates his attendance at the institution. This report shall be made on form I–20B.' "

You are hereby notified that pursuant to the above it is the intent of this Service to withdraw the approval previously granted. You may, within 30 days of the date of this notice, submit written representation under oath supported by documentary evidence setting forth reasons why the approval should not be withdrawn. If no response is forthcoming within that period, action will be taken on the basis of the evidence contained in the record.

\*　\*　\*　\*　\*　\*

The District Director's letter complied with the regulations. 8 C.F.R. § 214.3 (j) (1971).[2]

The school's answer to the District Director's letter was submitted by Regis-

to time the approval accorded to schools in his district. The review shall be made to determine whether the school meets the eligibility requirements of paragraph (e) of this section and has complied with the reporting requirements of paragraph (g) of this section. Each school whose approval is reviewed may be required to furnish a currently executed Form I–17 as a petition for continuation of approval without fee together with the supporting documents specified in paragraph (b) of this section. The review may include interview of the school's authorized representative and consultation with the United States Office of Education. If upon completion of the review the district director finds that the approval should be continued, he shall so notify the school when Form I–17 was submitted as a petition for continuation of approval; otherwise, he shall institute proceed-

ings to withdraw its approval in accordance with paragraph (j) of this section.

2. 8 C.F.R. § 214.3(j) (1971) is as follows: *Withdrawal of approval.* The approval of a school shall be withdrawn if it is no longer entitled to approval under section 101(a) (15) (F) of the Act, or under this part, for any reason including, but not limited to, the following: (1) Failure to submit reports required by paragraph (g) of this section. . . . Whenever a district director has reason to believe that an approved school in his district is no longer entitled to approval, he shall send it a notice of intention to withdraw the approval. The notice shall inform the school of the grounds upon which it is intended to withdraw its approval, and also shall inform the school that it may, within 30 days of the date of service

trar Greene on December 15, 1969. The answer was in the form of an affidavit by Dr. Blackwell. Dr. Blackwell prefaced her answer with the statement that she was a member of the South Carolina bar, and the bars of the Supreme Court of the United States, the United States Court of Claims, and several other courts, as well as "an accredited attorney for the Veterans Administration". Although she denied that the college had been remiss in reporting, she tendered no evidence in support of the denial.

On January 14, 1970 Dr. Blackwell was interviewed by three officials of the INS. At that time she submitted a list of 203 students for whom she claimed reports of nonattendance had been submitted on time. The INS examined a sampling of these reports "to ascertain whether in fact they were submitted and if so, whether the submissions were timely." (A.R. 177) Scrutiny of between 75 and 100 of the reports disclosed that in 26 instances they were filed from three to eleven months late. A tabulation of the 26 late reports, with an accompanying memorandum to the file, is in the administrative record. The tabulation identifies each report, giving the name of the student and the pertinent dates (A.R. 151, 152) [3]

On January 22, 1970 the District Director by letter informed Dr. Blackwell that since examination of individual student files taken from the list provided by her revealed that "a substantial number" of reports "were submitted from three months to eleven months later than permitted" the approval of her school was withdrawn. She was informed that she might appeal from this decision to the Regional Commissioner of the INS. (A.R. 150)

The school appealed to the Regional Commissioner, and Dr. Blackwell and two other lawyers, as counsel for the school, entered their appearances in the proceeding. (A.R. 140, 142, 143, 144) On April 17, 1970, Arthur W. Jackson, Esquire, one of Blackwell's counsel, appeared for oral argument of the appeal before the Regional Commissioner and two immigration officers at the Richmond, Virginia Regional Office of the INS. (A.R. 75–92) Dr. Blackwell was also present and participated in the argument. At the outset the school's representatives were advised by one of the immigration officers that "[t]his is an informal proceeding. We are here to hear anything that you wish to present. . . ." (A.R. 75) Blackwell submitted a brief (A.R. 101–112) and the following documentary evidence: a letter from the Veterans Administration dated February .6, 1970, indicating that the school is approved to enroll veterans in designated courses (A.R. 85) ; a letter to Blackwell from the American Embassy in Nigeria dated March 16, 1970, indicating that the INS had requested withholding of visas for prospective Blackwell students until a final decision had been made on the school's status (Appendix to Brief for Appellant [App.] 13 ; A.R. 86) ; a Form I–20A, student's certificate of eligibility with attachments (A.R. 87–91) issued to a Nigerian student; and a letter from the INS stating its policy for permitting students to accept employment during the coming summer vacation. (A.R. 92) The burden of Blackwell's brief and oral argument was that the school had been denied a proper hearing with representation by counsel. The school alleged compliance with the reporting requirements of the regulations but offered no supporting evidence.

At the conclusion of counsel's argument and presentation, the immigration officer, speaking for himself and the Regional Commissioner, stated: "[W]e are most willing to allow you to come in, to

of the notice, submit written representations under oath supported by documentary evidence setting forth reasons why the approval should not be withdrawn.

3. The memorandum also indicates that on or about February 20, 1969 and again on May 13, 1969 the INS warned the college and Dr. Blackwell that failure to submit the proper reports might result in withdrawal of approval. (A.R. 151)

be heard, to bring your witnesses. . . . [W]e would like to afford you every opportunity to be heard. I think this probably will take care of most of your argument here today; that you want your day in court. * * * So in effect what I would say that you're suggesting . . . is, that we remand the case to Washington to afford you another opportunity to perfect your case." (A.R. 83, 84) To this statement Mr. Jackson responded: "I have a victory. Thank you so much. That is what we asked for, this is what we requested, we feel that we can sustain our position. . . ." (A.R. 84)

On April 29, 1970 the Regional Commissioner filed his decision on the school's appeal. Referring to Dr. Blackwell's contention that she was denied an opportunity to appear with counsel at her interview on January 14, 1970, the Regional Commissioner remanded the case to the District Director for reopening, to enable Dr. Blackwell to appear with counsel for an interview, to inspect the record of the proceeding, and to make further representations. The District Director was instructed to reconsider the case after these steps had been taken. (App. 20; A.R. 68–69)

On June 15, 1970 the District Director notified the college that additional evidence supporting withdrawal of approval had been compiled and might be inspected. (A.R. 62) The additional evidence included a summary and analysis of 90 files pertaining to former Blackwell College students. Most of these files were chosen at random from the list of students provided by the college in January 1970; a few other names were culled from the files of the INS. The administrative record contains a tabulation of the files reviewed, showing the name of each student, the approximate date on which he enrolled in the school, the approximate date on which he left, the date on which the form I–20B was received from the school, and the "length of violation" in each case. (A.R. 11–20) In addition, the INS had obtained and placed in the record sworn statements from about forty former students concerning their attendance or nonattendance at the school. (A.R. 21–59) A memorandum summarizing this new evidence stated:

\* \* \* \* \* \*

Of the 90 files reviewed, violations were *established*, either through documentation contained in the files or through interview, in 63 cases, or approximately 70%. This is a conservative figure since in seven of these cases a final determination as to a violation has not yet been made. However, in the interests of saving time, no further attempts to make this determination shall be made and the benefit of any doubt given to Blackwell.

In summary, 116 files were reviewed, including the original 26, and a total of 89 violations counted. This means that 77% of the files revealed a violation; i. e., failure to submit I–20B's when the student failed to register, terminated, or was not attending regularly. (A.R. 10) (Emphasis in original)

\* \* \* \* \* \*

Dr. Blackwell, Registrar Greene, and counsel for the school all examined the entire administrative record, including the new evidence.

The complaint in this action was filed on July 1, 1970. (App. 1–7; A.R. 3–9; Brief for Appellant at 8) Thereafter the District Director informed Blackwell that it might appear with counsel on or before July 27, 1970, for an interview and also submit additional evidence and make further representations in its behalf. The letter stated that if Blackwell failed to respond by July 27, 1970, a decision would be rendered on the basis of the evidence of record. (App. 21)

Blackwell failed to take advantage of the opportunity for a further interview. Therefore, on August 13, 1970 the District Director again notified the school of withdrawal of its approval for attendance by nonimmigrant students. The stated ground for this action was the school's failure to fulfill the requirements of 8 C.F.R. § 214.3(g) (1971), in

that it had failed to report nonimmigrant students who carried less than a full course of study, attended classes irregularly, or terminated attendance. The notice also informed Blackwell that its case had been certified to the Regional Commissioner for review and that it might submit a brief or other written statement in connection with that review. (App. 22) The school did not submit its case to the Regional Commissioner.[4]

From this recitation of the details of the administrative proceedings I draw the following conclusions:

1. I cannot say that the original investigation, resulting in the District Director's letter of December 1, 1969, was *ex parte*. The investigation consisted of interviews with Dr. Blackwell and Mrs. Greene, the registrar of the school, together with an examination of the school records in their possession. I am not impressed by the suggestion that the absence of counsel at the interviews was prejudicial. Dr. Blackwell was herself a lawyer who later entered her formal appearance as a counsel for the school, and she was free to secure the assistance of additional counsel if she thought help was necessary. There is no indication or claim of any overreaching or unfairness on the part of the investigating officer. In any event the standards governing police interrogations in criminal cases should not be applied to this kind of interview.

2. The school has never been in doubt about the reasons for the proposed withdrawal of approval. These grounds were plainly stated in the District Director's letter of December 1, 1969, and were made specific and definite by later documentation. As I have said, the INS submitted to the school and its counsel a list of 89 cases in which the INS alleged that the school had failed to file proper reports. The list showed the name of each student, the date on which he enrolled in

the school, the date on which he left, the date on which his form I–20B was received and the "approximate length of violation." (A.R. 11–20, 152; 153)

3. The case for the INS was based upon reports submitted by the school and upon the school's own records. If rebuttal was possible the material for that purpose was available to the school in those same reports and records. Although the school was given every opportunity to produce such evidence, it did not do so.

4. The documentary evidence established a substantial basis for the action of the INS. The affidavits of former students were cumulative. Moreover, although these statements were made available to it, the school did not challenge the veracity of the affiants in any way, or make any attempt or offer, by subpoena or otherwise, to procure their attendance as witnesses or to take their depositions. Indeed, there is no indication that any of the affiants was even interviewed by counsel for the school.

5. I think this case is controlled by the principles of Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Those cases establish that administrative procedure need not "be stiff and comfortable only for the trained attorney" but may "be liberal and not strict in tone and operation." The only requirement is that the procedures be fundamentally fair. Richardson v. Perales, 402 U.S. at 400–401, 91 S.Ct. at 1427. In my judgment the procedures here met that test. The school had notice and every opportunity to present its case, if it had a case. This I think was all that was required.

Since the merits of the matter seem so plain to me, I do not debate the serious question raised by the school's failure to exhaust its administrative remedies.

4. On Blackwell's unopposed motion, this court granted a stay of the order terminating the school's approved status.