## BROWN, SECRETARY OF STATE OF CALIFORNIA *v.* CHOTE

No. 71–1583.   Argued February 22, 1973—Decided May 7, 1973

BURGER, C. J., delivered the opinion for a unanimous Court.

*Henry G. Ullerich,* Deputy Attorney General of California, argued the cause for appellant.   With him on the brief were *Evelle J. Younger,* Attorney General, and *Iver E. Skjeie,* Assistant Attorney General.

*Philip Elman,* by appointment of the Court, 409 U. S. 1035, argued the cause and filed a brief for appellee.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This case arises under 28 U. S. C. § 1253 on direct appeal from a three-judge district court in the Northern District of California.   The court was convened pursuant to 28 U. S. C. § 2281 when appellee called into

---

*Melvin L. Wulf, Sanford J. Rosen, Marguerite Buckley, A. L. Wirin, Fred Okrand,* and *Laurence R. Sperber* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

question the constitutionality of those provisions of the California Elections Code which require candidates in a primary election to pay a filing fee prior to having their names listed on the primary ballot. Cal. Elections Code §§ 6552 and 6553 (Supp. 1973). Under these provisions, candidates for the Federal House of Representatives must pay $425 (1% of the annual salary of the office); candidates for the Federal Senate must pay $850 (2% of the salary of the office). Those wishing to run for statewide offices must pay similar fees ranging in amount from $192 for State Assemblyman (1% of the annual salary) to $982 for Governor (2% of the annual salary). Other portions of the California Elections Code, not challenged in the present suit, require prospective candidates to file with appropriate state officials a declaration of candidacy and sponsor certificates. Cal. Elections Code §§ 6490–6491, 6494–6495 (1961 and Supp. 1973).

Appellee commenced this class action on March 3, 1972. He moved, and was granted permission by, a single district judge, to proceed *in forma pauperis* and as his own attorney. In his complaint, appellee asserted that he wished to become a candidate for the Federal House of Representatives from the 17th District of California, and had taken the following steps to place his name in nomination in the June 6, 1972, California primary election. On February 17, 1972, appellee called the Registrar of Voters of Santa Clara County, an official designated by state law to dispense those forms necessary to place a name in nomination. Appellee was purportedly told by the Registrar or a member of his office that he was required to pay $425 in advance in order to secure blank copies of the necessary papers. According to appellee, the Registrar's Office also advised him that the papers would be delivered in exchange for a worthless check.[1]

---

[1] The State denies that such advice was ever communicated to appellee. In an affidavit submitted to the District Court, the Regis-

Appellee proceeded immediately to the Registrar's Office where he presented a personal check for $425 and requested copies of the necessary forms. Across the face of the check, appellee had typed "Written under protest for filing fee." [2] The Registrar issued the requisite papers to appellee and informed him that his check would be forwarded to the California Secretary of State when his completed papers were submitted. Subsequently, a Deputy Secretary of State informed appellee that his name would not be placed on the ballot if his check was not honored.[3]

Citing *Bullock* v. *Carter*, 405 U. S. 134 (1972), appellee asserted that California's filing-fee system was unconstitutional since it barred indigents, such as himself, from seeking elective office and from voting for the candidate of his choice. In addition to requesting declaratory and permanent injunctive relief, appellee moved the District Court to issue a preliminary injunction so as to allow him to participate as a candidate in the upcoming primary. Under state law, the final date on which appellee could submit nominating papers for that primary was March 10, 1972, one week away.

Because of the impending filing deadline, the District Court proceeded quickly to set the case for argument.

---

trar of Voters of Santa Clara County stated that it was the policy of his office not to distribute the required forms to anyone who represented to the Registrar that the check submitted was worthless. The Registrar further stated that, to his knowledge, neither he nor anyone in his office had ever informed appellee that forms would be issued upon presentation of a worthless check.

[2] When the case was argued before the District Court, appellee claimed that he had also told the Registrar or a member of his office that the account on which the check was drawn did not contain sufficient funds to cover it. However, this fact is not alleged in the complaint.

[3] Appellant submitted to the District Court an affidavit from the Deputy Secretary of State to whom appellee had spoken, disputing appellee's claim that he had been informed that his name would not be placed on the ballot if his check was not honored.

On March 3, 1972, the same date on which the suit was filed, the single District Judge to whom the case was assigned entered an order requiring appellant to show cause why interlocutory relief should not be granted. The State was given five days in which to respond. It was not until March 7 that the Chief Judge of the Ninth Circuit was notified of the application for a three-judge court. On March 8, he designated the judges who were to compose the panel. On the same day, the court convened and heard oral argument. Because of the speed with which the case had developed, neither the court nor appellee had an opportunity prior to the hearing to consider appellant's return to the order to show cause, the only paper which the State had been able to prepare.

On March 9, 1972, one day after oral argument and one day before the deadline for filing nomination papers, the District Court granted appellee's motion for a preliminary injunction, stating:

> "Since no . . . showing has been made by the State, concerning either the necessity, the purpose or the reasonableness of the filing fee statutes in question, we conclude that within the rationale and holding of *Bullock* [v. *Carter,* 405 U. S. 134 (1972)], *plaintiff may prevail on the merits* and that, absent a preliminary injunction, his constitutional right may be irreparably lost." 342 F. Supp. 1353, 1355–1356. (Emphasis added.)

Under the terms of the preliminary injunction, the State was required to allow appellee and others similarly situated to place their names on the ballot without paying the required fee, so long as they were otherwise eligible for the applicable state or federal office and had deposited with an appropriate state official an affidavit attesting to their indigency.

The State appealed directly to this Court under 28 U. S. C. § 1253. Its Jurisdictional Statement posed two questions:

> "Under the decision of this Court in *Bullock* v. *Carter*, 405 U. S. 134 (1972), when a state statute requiring a candidate's filing fee of one per cent (1%) of the first year's salary for the office is challenged on Equal Protection grounds does the 'rational basis' or 'close scrutiny' standard of judicial review apply?
>
> "Do California Elections Code sections 6552 and 6553 deny voters or indigent prospective candidates equal protection of the laws?"

Thus, the State of California, for reasons not clear to us in light of the limited record, asked the Court to address itself to the ultimate merits of appellee's constitutional claim, a question which the District Court did not reach. In the present posture of the case, there is no occasion to consider any issues beyond those addressed by the District Court.

The issuance of the requested preliminary injunction was the only action taken by the District Court. In determining whether such relief was required, that court properly addressed itself to two relevant factors: first, the appellee's possibilities of success on the merits; and second, the possibility that irreparable injury would have resulted, absent interlocutory relief. As the District Court opinion clearly evidences, issuance of the injunction reflected the balance which that court reached in weighing these factors and was not in any sense intended as a final decision as to the constitutionality of the challenged statute. In the exigent circumstances, the grant of extraordinary interim relief was a permissible choice; but on the very limited record before the District Court a decision on the merits would not have been appropriate.

In reviewing such interlocutory relief, this Court may only consider whether issuance of the injunction constituted an abuse of discretion. *Alabama* v. *United States,* 279 U. S. 229 (1929); *United States* v. *Corrick,* 298 U. S. 435 (1936); *United Fuel Gas Co.* v. *Public Service Comm'n of West Virginia,* 278 U. S. 322 (1929); *National Fire Insurance Co. of Hartford* v. *Thompson,* 281 U. S. 331 (1930). In light of the arguments presented by appellee and the fact that appellee's opportunity to be a candidate would have been foreclosed, absent some relief, we cannot conclude that the court's action was an abuse of discretion. We therefore affirm the action taken by the District Court in granting interim relief.

In doing so, we intimate no view as to the ultimate merits of appellee's contentions. The record in this case clearly reflects the limited time which the parties had to assemble evidence and prepare their arguments. While the District Court's swift action is understandable in view of the deadline which it faced, the resulting record was simply insufficient to allow that court to consider fully the grave, far-reaching constitutional questions presented.

The specific deadline which led the District Court to grant equitable relief has now passed.[4] Nothing precludes appellee from seeking a trial on the merits, if he chooses to proceed. The case is therefore remanded to the District Court for further proceedings consistent with this opinion.[5]

*Affirmed and remanded.*

---

[4] Although the June 6 primary election has passed, the question raised is one "capable of repetition, yet evading review." Consequently, the case is not moot. *Southern Pacific Terminal Co.* v. *ICC,* 219 U. S. 498, 515 (1911); *Moore* v. *Ogilvie,* 394 U. S. 814, 816 (1969).

[5] We have granted certiorari in No. 71–6852, *Lubin* v. *Allison, post,* p. 964, in order to consider conflicts in holdings regarding the constitutionality of state filing-fee statutes.