NEW YORK PATHOLOGICAL AND
X–RAY LABORATORIES, INC., et
al., Plaintiffs-Appellants,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE et al.,
Defendants-Appellees.

No. 867, Docket 74–2630.

United States Court of Appeals,
Second Circuit.

Argued May 1, 1975.

Decided Aug. 18, 1975.

Edward J. Carroll, Burlington, Vt. (Thomas & Alexander, Burlington, Vt.), for plaintiffs-appellants New York Pathological and X-Ray Laboratories, Inc.; Bruce E. Rapkine and Samuel Rapkine.

Mary P. Maguire, Sp. Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, Steven J. Glassman, Asst. U. S. Atty., on the brief), for defendants-appellees.

Before MANSFIELD and MOORE, Circuit Judges, and HOLDEN, District Judge.*

HOLDEN, District Judge:

This is an appeal, pursuant to 28 U.S.C. § 1292 (1970), from an order of the United States District Court for the Southern District of New York,[1] denying the appellants' motion for a preliminary injunction. The District Court refused to grant the appellants the relief requested on the ground that they had failed to demonstrate either probable success on the merits or the existence of a sufficiently serious question on the merits to make it a fair ground for litigation. For the reasons which follow, we reverse and remand.

The appellants instituted this action, contending that the appellees' designation, pursuant to 8 C.F.R. § 234.2(b) (1973), of certain laboratory facilities as those approved to conduct required medical examinations of aliens seeking permanent residence status, was improperly enacted, suffers from vagueness and violates the appellants' due process and equal protection rights. The appellants seek declaratory and injunctive relief and, more particularly, the appointment of New York Pathological and X-Ray Laboratories, Inc. (hereafter New York X-Ray) to the list of designated facilities.

Prior to August 1, 1973, all aliens seeking status as permanent residents in the United States were required to have x-rays and a serology test performed by

---

* Of the United States District Court for the District of Vermont, sitting by designation.

1. The action was originally instituted in the District of Vermont, but transferred to the Southern District of New York.

a physician or laboratory of their choice. These test results were then presented to the examining officer of the United States Public Health Service. The appellants had conducted these examinations for some 25 years; they allege that New York X-Ray derived at least 15% of its gross income from providing this service to aliens.[2]

Since August 1, 1973, the medical examinations of these aliens have been and continue to be conducted in District # 3 solely by qualified clinics designated by the District Director of the New York District. After that date District # 3 of Region 1 of the Service refused to accept results of the appellants' examinations because New York X-Ray is not among those so designated. It contends that it meets the criteria allegedly utilized by the District Director in compiling the list of qualified facilities. Consequently, this action was undertaken to obtain a preliminary injunction, enjoining the Immigration and Naturalization Service (hereafter INS) from restricting New York X-Ray's right to conduct these medical examinations of aliens.[3]

■ The grant or denial of a preliminary injunction is within the discretion of the trial court, *Berrigan v. Norton*, 451 F.2d 790, 793 (2d Cir. 1971); reversal of the trial court's decision requires a showing of an abuse of that discretion. *Cinematografica v. D-150, Inc.*, 366 F.2d 373, 374 (2d Cir. 1966). In determining whether preliminary injunctive relief should be granted, the primary factors to be considered are the possibility of ultimate success on the part of the party seeking the relief and danger of irreparable injury if such relief is withheld. *Brown v. Chote*, 411 U.S. 452, 456, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973). Other important considerations include the direction of the balance of hardship between the parties, *Sanders v. Air Line Pilots Association, International*, 473 F.2d 244 (2d Cir. 1972), and whether the relief requested will adversely affect the public interest. *Yakus v. United States*, 321 U.S. 414, 440–441, 64 S.Ct. 660, 88 L.Ed. 834 (1944). *See generally* 11 Wright & Miller, *Federal Practice and Procedure, Federal Rules of Civil Procedure* § 2948 (1973). An analysis of these relevant factors favors the appellants' position, and we conclude that preliminary injunctive relief should have been granted.[4]

■ Irreparable harm can be found where there is a continuing wrong which cannot be adequately redressed by final relief on the merits. Such harm often resides where money damages cannot provide adequate compensation. *See Foundry Services, Inc. v. Beneflux Corporation*, 206 F.2d 214, 216 (2d Cir. 1953) (refusal to grant injunction *pendente lite* affirmed because adequate redress by way of money damages available). In the case before us, the appellants have alleged that they are suffering substantial loss of income because they are now prevented from performing certain medical examinations for aliens. Should the appellants succeed at trial on the merits, the Court would have no way to remedy the loss of business they are now suffering. Injunctive and declaratory relief prospectively applied in a final decree would not repair the continuing financial

---

**2.** It is also alleged that in 1974 appellants Bruce and Samuel Rapkine suffered a 20% and 80% decline respectively in their personal incomes, presumably as a result of the failure of New York X-Ray to be designated by the District Director as a laboratory qualified to perform these medical examinations for aliens.

**3.** Alternatively, the plaintiff requested that the defendants be enjoined from continuing to refer aliens to the newly designated facilities.

**4.** It is not necessary in every case that all four factors mentioned here favor the granting of preliminary relief in order for the court to issue the injunction. *See Gulf & Western Industries v. Great Atlantic & Pacific Tea Co.*, 476 F.2d 687, 692 (2d Cir. 1973); *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973). However, all four factors are relevant considerations for the court in making its decision.

loss.[5] The first requirement of demonstrating irreparable harm has been met.

■ Unlike the appellants, the appellees have made no showing whatsoever of any harm which will be visited upon them should the preliminary injunction issue. To the contrary, it is clear that enjoining INS from restricting New York X-Ray's right to conduct physical examinations of certain aliens will have no practical adverse effect on the appellees. It will merely provide one additional facility to afford aliens seeking permanent residence status the requisite medical examinations. The balance of hardship inclines favorably toward the appellants.

The lower court's refused to grant preliminary relief appears to have been principally based on its determination that the appellants would not succeed on the merits at trial. We disagree; there appears to be a sufficient likelihood of the appellants' success on the merits of at least one claim to justify preliminary injunctive relief.

■ The District Court upheld the District Director's designation of certain surgeons and facilities, stating that the regulation now published in 8 C.F.R. § 234.2(b) (1973) related only to agency procedure and was not subject to formal rule making requirements of 5 U.S.C. § 553 (1970). The Court further concluded that New York X-Ray was not a member of a regulated industry substantially affected by INS' change in procedure. Whether or not that is correct, it is clear to us that the designation of approved facilities constituted "a license required by law," within the reach of 5 U.S.C. § 558(c) (1970) which requires an agency to conduct proceedings in accordance with 5 U.S.C. §§ 556 and 557.[6] Except in limited cases involving willfulness and jeopardy of public health, interest or safety, the Administrative Procedure Act, 5 U.S.C. §§ 556 and 557 (1970), mandates an agency, in withdrawing, suspending or revoking licenses, to proceed on notice and to provide the opportunity for interested parties to be heard. Accordingly, INS was required to afford notice and to conduct hearings as required by these provisions in order to lawfully determine which surgeons and clinics it would approve and certify.[7]

■ Designation by INS is "required by law," as that phrase is used in 5 U.S.C. § 558(c). The status of aliens admitted into the United States is subject to regulations promulgated by the Attorney General. By force of such a regulation (8 C.F.R. § 234.2), a clinic, like New York X-Ray, that is *not* approved by the INS is *not* permitted to conduct the medical examinations. This fact is conclusive on the point that such approval is, in essence, a governmental license to perform such tests. *See Blackwell College of Business v. Attorney General,* 147 U.S.App.D.C. 85, 454 F.2d 928 (D.C.Cir. 1972). We find there is a favorable prospect of success on the merits as to this aspect of the appellants' claims.[8]

---

5. Although the appellants could attempt to obtain money damages by way of a civil rights action based directly on the Fifth Amendment, *see Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), there has been no clear holding by the U. S. Supreme Court that a right to this relief exists. *See District of Columbia v. Carter,* 409 U.S. 418, 433, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973). Furthermore, assuming *arguendo* that a cause of action on the Fifth Amendment would lie, the appellants would confront some difficulty in meeting the defense of good faith, should it be raised by the appellees. *See Bivens v. Six Unknown Named Agents,* 456 F.2d 1339 (2d Cir. 1972).

6. 5 U.S.C. § 551(8): "'license' includes the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission . . . ."

7. Appellees conceded at oral argument that the designation of the list was a form of approval, and that if such approval constituted a license, then prior hearings were required. Whether New York X-Ray will qualify for certification is of no concern in this review.

8. Because we find a high likelihood of success on the appellants' claim that the appellees violated some of the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

■ Finally, we turn to the question of what effect preliminary injunctive relief will exert on the public interest. As we have previously noted, the issuance of the injunction will make available one additional facility to those aliens who are required to undergo medical examinations. Conceivably the testing time will be expedited to the benefit of the aliens and the INS. In any event, there is no showing that the grant of the preliminary relief requested will have an adverse effect on the public interest.

■ In summary, consideration of the factors relevant to the issuance of preliminary injunctive relief clearly indicates that the injunction should have been granted. Its denial inflicts a continuing loss on the appellants that is otherwise irremediable. Thus, we find that the lower court's refusal to grant the relief requested exceeded the limits of sound judicial discretion.

The order of the District Court is reversed, and the cause is remanded with instructions to issue a preliminary injunction in accordance with this opinion.

MOORE, Circuit Judge (dissenting):

The principal issue in this appeal is whether the appellant, New York Pathological and X-Ray Laboratories, Inc. (N.Y. X-ray), is likely to succeed at trial with its contention that the Immigration and Naturalization Service's (INS) change in procedures respecting the medical examination of immigrant aliens violated N.Y. X-ray's statutory or constitutional rights. Although not reaching the constitutional issue, the majority holds that the INS' designation of certain approved facilities to conduct medical examination constituted a "license" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551 et seq.

and further that the INS was required to afford N.Y. X-ray notice and a hearing before excluding it from the list of approved facilities. Because I do not believe that notice and a hearing was either statutorily or constitutionally required, I dissent.

Admittedly, the approval of a limited number of facilities in this case probably constitutes a "license" under the broad definition of that term contained in 5 U.S.C. § 551(8) (" 'license' includes the whole or part of an agency permit, . . . approval, . . . or other form of permission."). But the APA itself gives no right to a hearing prior to the grant or denial of such a license. Section 558(c), the provision relied upon by the majority, provides in part:

(c) When application is made for a license required by law, the agency, with due regard for the rights and privileges of all the interested parties or adversely affected persons and within a reasonable time, shall set and complete proceedings required to be conducted in accordance with sections 556 and 557 of this title or other proceedings required by law and shall make its decision. Except in cases of willfulness or those in which public health, interest, or safety requires otherwise, the withdrawal, suspension, revocation, or annulment of a license is lawful only if, before the institution of agency proceedings therefor, the licensee has been given—

(1) notice by the agency in writing of the facts or conduct which may warrant the action; and

(2) opportunity to demonstrate or achieve compliance with all lawful requirements. . . .

This section applies only to license application proceedings "required to be con-

---

(1970), we need not determine whether there is also a likelihood that the appellants will succeed on their due process and equal protection claims as well.

However, we note that some licenses have been held to constitute property rights to be accorded due process protection, *Blackwell College of Business, supra; Bell v. Burson,* 402

U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), and that the dictates of equal protection are applicable to the Federal Government through the due process clause of the Fifth Amendment. *See Johnson v. Robison,* 415 U.S. 361, 364 n. 4, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Bolling v. Sharpe,* 347 U.S. 497, 500, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

ducted." [1] Although the language is somewhat obtuse, in my view it means that the APA itself provides no right to a hearing. Rather, any such right must emanate from some other source. Obviously, 8 C.F.R. § 234.2,[2] the regulation challenged herein, provides no such right. It simply places the selection of the necessary qualified civil surgeons or clinics within the discretion of INS' district directors. And our attention has been directed to no other statute or regulation which affords a right to a hearing for a potential licensee.

Nor, in my opinion, does the due process clause of the Fifth Amendment compel that the INS select the facilities to conduct medical examinations after notice to all potential applicants and hearings to select those most qualified to perform the task. The Supreme Court has instructed in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), that as a threshold matter, one seeking to invoke the procedural protection of the due process clause must show that governmental action has deprived him of liberty or property. On this record at least, the appellant has not shown the existence of such an interest. It is alleged only that the appellant's

x-ray and serology test results had been accepted for twenty-five years. But N.Y. X-ray had no written assurance that this practice would continue, and it has not demonstrated any basis upon which such assurance might be implied. The most that can be said is that N.Y. X-ray had an expectancy based on long service that it would continue to be qualified to perform these tests. Such an expectancy standing alone is insufficient to trigger the operation of the due process clause. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). In this respect, this is a different case than *Blackwell College of Business v. Attorney General,* 147 U.S. App.D.C. 85, 454 F.2d 928 (D.C.Cir.1971). There the Attorney General had approved Blackwell College for attendance by non-immigrant aliens. The statute under which approval was granted and applicable regulations imposed certain reporting requirements on the College and indicated that the approval would terminate if the College failed to file the necessary reports. Under these circumstances, the College had a basis for believing that the approval would remain in effect as long as it fulfilled its reporting obligations. And when the Attorney General sought to terminate the approv-

1. This interpretation of section 558(c) seems in accord with other sections of the Act. 5 U.S.C. § 556, dealing with procedural aspects of hearings applies only to "hearings required by section 553 or 554", and 5 U.S.C. § 554, dealing with adjudications, applies only to adjudications "required by statute". In short, the right to a hearing must be found outside the Act.

2. The regulation provides:

(a) *General.* When a medical examination is required of an alien who files an application for status as a permanent resident under section 245 of the Act or Part 245 of this Chapter it shall be made by a selected civil surgeon. Such examination shall be performed in accordance with 42 CFR Part 34 and any additional instructions and guidelines as may be considered necessary by the U.S. Public Health Service. In any other case in which the Service requests a medical examination of an alien the examination shall be made by a medical officer of the U.S. Public Health Service or by a civil surgeon if a medical officer of the U.S. Public

Health Service is not located within a reasonable distance or is otherwise not available.

(b) *Selection of civil surgeons.* When a civil surgeon is to perform the examination, he shall be selected by the district director having jurisdiction over the area of the alien's residence. The district director shall select as many civil surgeons, including clinics employing qualified civil surgeons, as he determines to be necessary to serve the needs of the Service in a locality under his jurisdiction. Each civil surgeon shall be a licensed physician with no less than 4 years professional experience. Officers of local health departments and medical societies may be consulted to obtain the names of competent surgeons and clinics willing to make the examinations. An understanding shall be reached with respect to the fee which the surgeon or clinic will charge for the examination. The alien shall pay the fee agreed upon directly to the surgeon making the examination. . . . .

al on the ground that Blackwell College had failed to file certain reports, the College was therefore entitled to the due process procedural protections. Here, in contrast, there had been no formal approval issued to N.Y. X-ray, and there was apparently no basis for it to believe that the acceptance of its test results would continue indefinitely.

This case is also distinguishable from decisions holding that due process applies to certain applicants for licenses. For example, *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963) (applicant for admission to the bar), *Goldsmith v. Board of Tax Appeals,* 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926) (admission of a certified public accountant to practice before Board of Tax Appeals), and *Hornsby v. Allen,* 326 F.2d 605, *on rehearing,* 330 F.2d 55 (5th Cir. 1964) (applicant for a license to run a retail liquor establishment), all involved the right to engage in a chosen occupation. *See Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Here, however, there is no indication that loss of about 15% of its business will prohibit N.Y. X-ray from carrying on its business. *See Board of Regents v. Roth, supra,* 408 U.S. at 574 n.13, 92 S.Ct. 701. And even in *Holmes v. New York City Housing Authority,* 398 F.2d 262 (2d Cir. 1968), where this court held that applicants for public housing were entitled to have tenant selections made by "ascertainable standards", there existed a statutory right to public housing for those persons who met the eligibility requirements.

In short, I see no constitutional infirmity in a regulation that vests in a public official the discretion unilaterally to choose which of a number of qualified facilities should perform a service for the government. It should be added that there has been no significant showing that the selection criteria employed by the district director were impermissible. The selections were apparently made after calls to the New York State Medical Society and various others knowledgeable in the field of medicine during which the names and qualifications of various medical facilities were ascertained. The choices were guided by geographical convenience, capability to perform x-ray and serology tests as well as the actual medical examination, speed of results, capacity and sufficient staff to accommodate sizable numbers of aliens, and prevention of fraudulent substitution of results by testing and medical examinations occurring at the same facility. Although on the basis of its own survey, N.Y. X-ray alleges that it is better qualified than the 32 facilities designated by the district director, nothing requires the district director to select facilities that meet all the criteria. Furthermore, I find nothing unusual about the fact that twenty-seven of the facilities are affiliated with the same organization (the Health Insurance Plan of Greater New York) and that only two are independent facilities. For purposes of administrative convenience alone, it makes sense to have to deal with as few separate organizations as possible.

In summary, N.Y. X-ray has no entitlement—constitutional, statutory or otherwise—to receive business referred by the INS. The appellant's real quarrel with the INS has to do with the district director's exercise of his discretion. I find insufficient evidence of any abuse of that discretion to justify the issuance of a preliminary injunction.