See also, 3 Cir., 483 F.2d 852.

**RONSON CORPORATION**

v.

**LIQUIFIN AKTIENGESELLSCHAFT,**
**Appellants in No. 73–1587, et al.**

**Appeal of FRANKLIN NATIONAL**
**BANK and Franklin New York Cor-**
**poration in No. 73–1606.**

**Nos. 73–1587, 73–1606.**

United States Court of Appeals,
Third Circuit.

Argued July 20, 1973.

Decided July 24, 1973.

Carpenter, Bennett & Morrissey, Newark, N. J., Mudge, Rose, Guthrie & Alexander, New York City, for Liquifin Aktiengesellschaft, Liquigas S.p.A., D. F. King & Co., Inc., Servizio Italia of Banca Nazionale del Lavoro, Philip Marfuggi, Raffaele Ursini, and Michele Sindona, appellants in No. 73–1587.

Garrett E. Brown, Jr., Stryker, Tams & Dill, Newark, N. J., Cravath, Swaine & Moore, New York City, for Kuhn, Loeb & Co., Inc., appellant in No. 73–1587.

Hannoch, Weisman, Stern & Besser, Newark, N. J., Kaye, Scholer, Fierman, Hays & Handler, New York City, for Franklin National Bank and Franklin New York Corp., appellants in No. 73–1606.

Schapira, Steiner & Walder, Newark, N. J., Holtzmann, Wise & Shepard, New York City, Wald, Harkrader & Ross, Washington, D. C., for Ronson Corp., appellee in Nos. 73–1587 and 73–1606.

Before VAN DUSEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

These appeals challenge a preliminary injunction issued by the district court on July 5, 1973, enjoining and restraining the defendants, and those acting on their behalf or in concert with them, from (a) soliciting the tender of any shares of Ronson common stock pursuant to the OFFER TO PURCHASE of Liquifin Aktiengesellschaft (Liquifin), "as heretofore or hereafter modified or extended," (b) acquiring or attempting to acquire in any manner any shares of Ronson, and (c) voting any shares of Ronson previously acquired, etc.[1] This order was supported by a 26½ page opinion, containing findings of fact and conclusions of law, dictated by the district judge on July 3, 1973, and filed July 5, 1973.[2] Liquifin is a Liechtenstein company and is a wholly owned subsidiary of Liquigas S.p.A. (Liquigas), which is a large Italian industrial company.

The complaint was filed as the result of a tender offer[3] by Liquifin to buy

1. The first paragraph of the decree provisions of the July 5, 1973, order provides:

"ORDERED that defendants and each of them, their agents, servants, employees, and all persons acting on their behalf or in concert with them, are during the pendency of this action and and until a trial on the merits shall have been had enjoined and restrained from (a) soliciting the tender of any shares of Ronson common stock to Liquifin pursuant to Liquifin's 'Offer to Purchase', as heretofore or hereafter modified or extended; (b) acquiring or attempting to acquire in any manner any shares of Ronson; and (c) voting any shares of Ronson previously acquired, or otherwise utilizing any share of such stock or shares of Ronson stock previously acquired, as a means of controlling or affecting the management of Ronson; . . . ."

On the same day, the district court, by separate order, denied defendants' application for a stay pending appeal, except insofar as the above-mentioned order granted a stay as to certain of its provisions for a ten-day period.

A panel of this court, consisting of Judges Gibbons and Hunter, denied a Motion For Stay of the July 5 preliminary injunction by order of July 12, which order prescribed an expedited briefing schedule and argument of the appeal (No. 73–1587) on July 20, with provision that the Motion For Stay also be argued on July 20.

2. Appellee's brief at page 4 states that the preliminary injunction was "orally granted" on July 3.

3. Section 14(e) of the Securities Exchange Act of 1934, as added by the Williams Act (P.L. 90–439, as amended by P.L. 91–567), 15 U.S.C. § 78n(e), provides:

"(e) It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative."

See also 15 U.S.C. § 78n(d) ; SEC Rule 14(d)(1). The Supreme Court has stated that the securities acts should not be construed technically and restrictively but "flexibly to effectuate [their] remedial purpose." SEC v. Capital Gains Research Bureau, 375 U.S. 180, 195, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). The desire of Congress to provide adequate disclosure to investors where cash tender offers are made is summarized and docu-

Ronson common stock at $8.50 per share, publicly announced through newspapers, including financial publications, and filed with the SEC on May 31, 1973. The district court entered a temporary restraining order and directed expedited discovery on June 5. The background of the tender offer and the various companies and individuals involved are described in the district court opinion and need not be repeated here. The district court stated, at pages 12a–13a, 15a–16a, 18a–19a and 20a–21a of its opinion:[4]

"The Court is most concerned with plaintiff's allegations that defendants have failed to disclose adequately or materially misrepresented the persons behind and methods used to fund the offer; the foreign controls involved in the offer; and the administrative obstacles to the offer under federal law.

"These allegations are based upon Section 14(e) which tracks the language of Rule 10b–5, 17 C.F.R., Sec. 240 10b–5 (1972), except that Section 14(e) applies to tender offers and Rule 10b–5 applies to the purchase or sale of securities. The elements of an action for injunctive relief are essentially the same under Section 14(e) and Rule 10b–5. Under both the determinative question is: Was the omission or misrepresentation of fact material? A material fact is that which a reasonable investor would consider important in the making of his decision to tender or not to tender in response to Liquifin's offer. [Citing cases.] A material misrepresentation occurs when there is a substantial likelihood that the misstatement may have led a stockholder to tender his stock; whereas in the absence of the misrepresentation he would not have tendered. [Citing case.] [12a–13a]

.    .    .    .    .    .    .

". . . defendants have not made any showing of irreparable harm. They assert that if preliminary injunctive relief is granted, the investment world, for all practical purposes, will consider the tender offer terminated. Judge Timbers, in his excellent opinion in *Gulf & Western, supra*, demonstrated the fallacy of this argument by saying if the defendants prevail after a trial on the merits, they will not be foreclosed from renewing their tender offer. Indeed, even if they do not prevail, there is nothing in the Williams Act to prevent resolicitation of these shares with full and fair disclosure of all material facts.

"Thus, the balance of equities clearly favors the plaintiff. [15a–16a]

.    .    .    .    .    .

"Plaintiff claims that defendants' attempt to characterize Mr. Ursini as the only person in control of Liquigas is misleading. Ronson believes that the following are 'control persons' within the applicable Securities laws: (1) Montecatini Edison, S.p.A., an Italian company owning approximately 25 percent of the outstanding stock of Liquigas; (2) Servizio Italia of Banca Nazionale del Lavoro, an Italian statutory fiduciary company holding approximately 36 percent of the common stock of Liquigas for the benefit of Ursini; (3) Societa Generale Immobiliare, an Italian company which holds Liquigas' guarantees of approximately $80[5] million of Manifattura Ceramica Pozzi, S.p.A. debts to Immobiliare; and (4) defendant Michele

mented in Dyer v. Eastern Trust and Banking Company, 336 F.Supp. 890, 907–908 (D.Maine 1971), as well as the cases cited in the district court opinion (see 9a ff.).

4. After pointing out that the key facts are best summarized in the chart marked Plaintiff's Exhibit 1(c) and giving examples of undisclosed information illustrated by the interlocking business entity rela-

tionships shown on that chart, the court concluded at 23a:

"In this Court's mind some of these mysteries must be delved into for the benefit of the Ronson stockholders so that they might make an intelligent investment decision." (23a)

5. We have assumed that the amount "$80 million" on line 22 of 21a should read "$60 million."

Sindona, the sole owner of Fasco International Holding S.A., a Swiss holding company which owns a 21.6 percent interest in defendant Franklin New York Corporation as well as approximately 40 percent of Immobiliare. [18a–19a]

.    .    .    .    .    .

"   .    .    .   under the peculiar circumstances of this case and considering the Congressional purpose behind the Williams Act, the Court is more inclined to accept plaintiff's view that more than one person could be in control of a corporation. In this case, even if Ursini is the sole control person of Liquigas, there are material facts that, if omitted as has been the case here, would create a misleading description of Ursini's control. Also, many of these facts developed through discovery relate to the source of funds question because, in the Court's view, these facts would affect a stockholder's choice to tender his shares especially in light of the involvement of foreign entities unfamiliar with the problems of managing a large American corporation such as Ronson. At every stage of discovery, more and more facts developed the control relationships and intricate maneuvering of funds through international shell corporations resulting in a labyrinthinic maze which is barely comprehensible to this Court." [20a–21a]

■ After consideration of the record, we conclude that there was no reversible error in the conclusions by the district court that plaintiff "has met its burden of proof under Section 14(e) and is entitled to preliminary injunctive relief" (23a). Defendants-appellants have not demonstrated that there has been an abuse of discretion by the district court in granting its July 5, 1973,

preliminary injunction on the record before it. See Brown v. Chote, 411 U.S. 452, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973); United States Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F. 2d 1046, 1048 (3d Cir. 1970). In the latter case, Judge Aldisert pointed out:

"   .    .    .   this appeal involves only a review of a preliminary determination by the district court, dictated by the trial judge's finding the appellees established a reasonable probability of success at final hearing coupled with a demonstration of irreparable harm absent preliminary relief.   .    .    .

.   .   .   .   .   .   .

"This limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief. Weighing these considerations is the responsibility of the district judge; only a clear abuse of his discretion will justify appellate reversal."

See also Gulf & Western Indus., Inc. v. Great A. & P. Tea Co., Inc., 476 F.2d 687, 692–693 (2d Cir. 1973);[6] Bath Industries, Inc. v. Blot, 427 F.2d 97, 111 (7th Cir. 1970).

■ Also, we believe that the court was entitled to point out that the deficiencies in the disclosures before it could be explored in the hearing on final injunction. The defendants contend that we should consider an eight-page printed supplement to its tender offer published on July 13, after the district court's July 5 preliminary injunction and after this court had denied their Motions To Stay by its July 12 order. We have concluded

---

6. In this case, the court said, 476 F.2d at pages 698–699:
"   .    .    .   in balancing the equities, the public interest must be considered. .    .    .   Since it is impossible as a practical matter for the government to seek out and prosecute every important violation of laws designed to protect the public in the aggregate, private actions brought by members of the public in their capacities as investors or competitors, which incidentally benefit the general public interest, perform a vital public service."

that defendants should apply to the district court for any reconsideration of the preliminary injunction in the light of this supplemental information which was not available to it prior to its order. It will be up to the district court, with its greater familiarity with the record,[7] to determine initially whether the July 13 Amendment to the Tender Offer makes it feasible to revise the current preliminary injunction prior to the prompt final hearing which the district court plans to conduct. We note that the district court opinion recognizes that (18a):

"... the court should consider any curative steps taken by defendants to remedy any misinformation provided to the stockholders. ... Therefore, in order to determine

whether defendants have violated Section 14(e), the Court must evaluate the truthfulness and accuracy of all the relevant information provided to the Ronson stockholders."

Also, the following should be said, in addition to the foregoing, in view of the prompt return of this case to the district court:

A. Although the district court was justified in commenting that the tender offer presented to federal authorities "very substantial questions of administrative law," which the tender offer, as modified prior to the July 5 injunction, misleadingly treated as if probably subject to resolution without divestiture of the helicopter and defense business,[8] we agree with de-

---

7. The district court stated in its opinion that it had reviewed "thousands of pages of depositions, interrogatories and affidavits" (7a).

8. For example, the original tender offer stated, *inter alia*, at page 5:

"... the Act requires approval by the CAB of the acquisition by any person of control of an air carrier, including the Helicopter Subsidiary.

"Accordingly, the Offeror and the Trustee have applied to the CAB for an order or orders (i) disclaiming jurisdiction over, or granting an exemption to, the acquisition by the Offeror and the Trustee of interests in Common Stock of the Company and (ii) granting an exemption or otherwise approving acquisition of control of the Helicopter Subsidiary by the Trustee.

"In connection with the foregoing application to the CAB, the Offeror and the Trustee have agreed that should the CAB so require, as a condition of the issuance of an order requested by the Offeror, or should the Offeror, at its option so direct, the Trustee will dispose of its interest in the Company or the Helicopter Subsidiary.

"The Offeror's counsel specializing in aviation law, Messrs. Bebchick, Sher & Kushnick, has advised the Offeror that in its opinion (i) the CAB should issue an order either disclaiming jurisdiction over, or exempting, the acquisition by the Offeror and the Trustee of the interests to be acquired by them in the Common Stock of the Company, (ii) the CAB ultimately will exempt or

otherwise approve any acquisition of control of the Helicopter Subsidiary involved in the transactions, and (iii) that the foregoing actions by the CAB would constitute an implicit determination that the Helicopter Subsidiary will remain a United States citizen. In such counsel's opinion, the CAB might limit the duration of the Trust or require the disposition of the Helicopter Subsidiary to another party. If the CAB did impose the latter requirement, it might be feasible, in lieu of a sale of the Helicopter Subsidiary, to surrender the authority to operate an air taxi service as a common carrier, since such counsel is of the view that the transfer of the stock of the Helicopter Subsidiary to the Trustee and vesting the Trustee with effective control over the Helicopter Subsidiary would satisfy the Federal Aviation Administration as respects matters under its jurisdiction."

By order of July 19, 1973, at Docket Nos. 25,583 and 25,603, the Civil Aeronautics Board stated at page 5:

"... we are not prepared to find, absent further development of the underlying facts relating to the issue, that the voting trust agreement by its own terms insulates the acquisition of control of Ronson Helicopters from the Board's jurisdiction under section 408 (a)(5) of the Act. We conclude, therefore, that a disclaimer of jurisdiction would not be warranted.

"Under the terms of the proviso to section 408(a)(5), the Board may exempt the acquisition of a non-certifi-

fendants that clearances from the several administrative agencies involved[9] need not be secured prior to a final tender offer, provided that the approximate gross amounts, type, profits, etc., of Ronson's business affected, which may be permissibly revealed in the light of the security needs of the defense business as determined by the district court, are disclosed.

B. The following statement of Judge Mansfield in Sonesta International Hotels Corporation v. Wellington Associates, 483 F.2d 247 (2d Cir., 1973), is applicable to the record before the district court on July 5:

"Where the foregoing standard has been met preliminary injunctive relief is a particularly useful remedy for prevention of probable violations of the disclosure requirements of the Act, for the reason that prior to consummation of the offer the court still has a variety of methods available to it for correction of the misstatements or omissions. [Citing case.] But once the tender offer has been consummated it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.' [Citing cases.] On the other hand, preliminary relief does not, in assuring that the offer will be lawfully made, sacrifice the legitimate desires of shareholders to accept the offer. If the offeror is subsequently vindicated after a trial on the merits, the offer may be renewed. Thus, in the normal situation, when it appears likely that the offer may contain materially misleading statements or omissions as made, the interest of the shareholders and of the public in full disclosure of relevant circumstances renders preliminary injunctive relief an appropriate method of remedying the deficiencies in disclosure before the offer is consummated.

"The probability of success on the merits in any application for injunctive relief turns greatly upon whether the plaintiff has shown that the tender offer under attack has misstated or omitted *material* facts. The materiality of facts allegedly misstated or omitted depends, in turn, upon whether a reasonable investor might have considered them to be important in deciding whether to accept the tender offer."

As to materiality of the facts, see also SEC v. Texas Gulf Sulphur Co., 401 F.

---

cated air carrier from the requirements of Board approval 'to the extent and for such periods as may be in the public interest.' Applicants' request involves complex issues of fact, law, and Board policy relating to such matters as the qualification of Ronson Helicopters, following its acquisition, to engage as a citizen of the United States in air transportation, the Board's policy regarding foreign ownership or control of a U.S. air carrier, and the adequacy of the trust agreement herein to insulate the air carrier, Ronson Helicopters, from the ownership and control of Liquigas/Liquifin. Under all the circumstances, we are not persuaded that, on the basis of the application in Docket 25583 and other documents before us, a sufficient showing of public interest has been made to warrant the grant of an exemption under section 408(a)(5) in respect to the transaction herein. Therefore, applicants' request for exemption will be denied." [Footnotes omitted.]

The first two paragraphs of the ordering terms read (p. 7):

" . . . It Is Ordered That:

"1. Applicants' requests for disclaimer of jurisdiction and exemption pursuant to the proviso of section 408(a)(5) in respect to the acquisition and control relationships in Docket 25583, be and they hereby are denied;

"2. Applicants' requests for disclaimer of jurisdiction over or approval of the interlocking relationships in Docket 25603, and for approval of the acquisition and control relationships in Docket 25583, be and they hereby are set for hearing before an Administrative Law Judge of the Board at a time and place to be hereafter designated; . . . ."

9. 49 U.S.C. § 1378(a)(5) makes it unlawful for any person to acquire control of an air carrier "in any manner whatsoever" without the approval of the CAB.

2d 833, 849 (2d Cir. 1968), quoted in *Sonesta, supra,* 483 F.2d at p. 250.

Our affirmance is without prejudice to any application defendants may make to the district court for vacation or modification of its preliminary injunction in the light of the above-mentioned July 13 Notice of Amendment and any additional disclosures defendants may make, in the light of the present situation,[10] with respect to their OFFER TO PURCHASE 2,200,000 shares of the common stock of Ronson Corporation.

For the foregoing reasons, the July 5, 1973, district court order will be affirmed and the case will be remanded to the district court for further proceedings not inconsistent with this opinion.[11] The mandate or certified judgment in lieu of mandate shall issue forthwith.

10. See, for example, the July 19 CAB order mentioned above.

11. An opinion will be filed at No. 73–1606 dealing with certain contentions raised by the appellants in that appeal which are not applicable to the appellants at No. 73–1587.