**RONSON CORPORATION, Plaintiff,**

v.

**LIQUIFIN AKTIENGESELLSCHAFT
et al., Defendants.**

Civ. A. No. 785–73.

United States District Court,
D. New Jersey.

Jan. 11, 1974.

Order Feb. 6, 1974.

McCarter & English by Julius B. Poppinga, Newark, N. J., and Cahill, Gordon & Reindel by Raymond L. Falls, Jr., David R. Hyde, Roger S. Fine, George Wailand, New York City, for plaintiff.

Carpenter, Bennett & Morrissey by John E. Keale, Newark, N. J., and Mudge, Rose, Guthrie & Alexander by Donald J. Zoeller, John J. Witmeyer, III, John B. Sherman, New York City, for defendants Liquifin, Liquidgas, D. F. King & Co., Servizio Italia, Marfuggi, Ursini and Sindona.

Stryker, Tams & Dill, Newark N. J., and Cravath, Swaine & Moore by Robert S. Rifkind, Paul C. Saunders, New York City, for defendant Kuhn, Loeb and Co.

Hannock, Weisman, Stern & Besser, Newark, N. J., and Kaye, Scholer, Fierman, Hays & Handler by Milton Kunen, Mark Zauderer, New York City, for defendants Franklin National Bank and Franklin New York Corp.

## OPINION

CLARKSON S. FISHER, District Judge.

In this lengthy and complex litigation plaintiff now seeks a permanent injunction under Section 14(e) of the Securities Exchange Act of 1934,[1] against the

---

1. Section 14(e) was added to the Securities Exchange Act of 1934 by the Williams Act, P.L. 90–439, as amended by P.L. 91–567, 15 U.S.C. Sec. 78n(e). *See* Ronson Corporation v. Liquifin Aktiengesellschaft, 483 F.2d 846, 847 n. 3 (3d Cir. 1973) ; S.Rep.No.510, 90th Cong., 2d Sess. (1968) quoted in 2 U. S.Code Cong. & Admin.News, pp. 2811, 2821 (1968) ; H. K. Porter Co., Inc. v. Nicholson File Co., 353 F.Supp. 153, 163 (D.R.I.1972), aff'd, 482 F.2d 421 (1st Cir. 1973).

defendants who are attempting to acquire control of the plaintiff, Ronson Corporation, by means of a cash tender offer. The defendants seek to remove the preliminary injunction against them entered by this Court on July 5, 1973 so that their tender offer may proceed.

In view of the status of this case, where now the parties are before the Court on a final hearing for permanent injunctive relief, a brief review of the procedural history is necessary. The complaint was filed as the result of a tender offer by defendant Liquifin Aktiengesellschaft ("Liquifin"), a Liechtenstein company and a wholly-owned subsidiary of a large Italian industrial company, defendant Liquigas S.p.A., ("Liquigas") to buy Ronson common stock at $8.50 per share.[2] This tender offer was publicly announced in newspapers and financial publications and filed with the Securities and Exchange Commission ("SEC") on May 31, 1973. On June 5, 1973 this Court entered a temporary restraining order and directed expedited discovery.

After a hearing, a preliminary injunction was entered on July 5, 1973 which was subsequently affirmed by the Court of Appeals for this Circuit. Ronson Corporation v. Liquifin Aktiengesellschaft, 483 F.2d 846 (3d Cir. 1973) and Ronson Corporation v. Liquifin Aktiengesellschaft, 483 F.2d 852 (3d Cir. 1973).

Upon the return of the case to this forum, the defendants moved to modify or vacate the preliminary injunction on the basis of amendments to the tender offer. Their motion, based upon the amendments of July 13 and the unpublished amendments of August 1, was denied on August 15, 1973. On September 26, 1973 this Court denied a similar motion of defendants based upon a restated tender offer dated September 11, 1973 (hereinafter referred to as the "Restatement"). However, this denial was without prejudice to renew at the final hearing for permanent injunctive relief. Defendants' renewal of this motion is now before the Court.

I

In an effort to resolve promptly and fairly only the claims for injunctive relief, this Court reviewed plaintiff's requests for discovery, and by orders of September 26, 1973, October 12, 1973, October 25, 1973 and December 5, 1973, directed the course of discovery. As stated previously, these orders were entered pursuant to F.R.Civ.P. 26 which provides a remedy to protect any party from financial embarrassment, undue burden, or expense. Both parties during this litigation have submitted confidential commercial information to the Court *in camera.*[3]

Plaintiff contends that the unavailability of these documents has adversely affected its discovery rights. These arguments are without merit. It cannot be questioned that Rule 26 provides the authority to enter such orders. Under the Williams Act, the Court becomes the trier of fact to determine whether injunctive relief should be entered. If the information provided *in camera* fails to resolve adequately the important factual disputes, the party offering these documents runs the risk of having that issue of fact determined in favor of the opposing party or perhaps a

---

2. The price per share which the offeror will pay for tendered shares of Ronson common stock has been reduced to $8.18. The number of shares which the offeror is willing to purchase has been increased from 2,200,000 to 2,288,000. These adjustments were made by the offeror after plaintiff Ronson announced its intention on December 19, 1973 to declare a four percent stock dividend payable on February 15, 1974 and a cash dividend of six cents per share payable on January 24, 1974 to the shareholders of record

on January 10, 1974. On December 28, 1973 this Court entered an order which permitted the offeror to file an amendment to the Schedule 13D statement previously filed with the Securities and Exchange Commission. That amendment described these adjustments to the offer.

3. These documents will be sealed with directions that only this Court or any Judge or Justice of a federal appellate court may break the seal to inspect the documents.

ruling that it has failed to sustain a burden of proof placed upon it by the law. Also, if the Court determines that this information does not fall within any legally recognized privilege, or would not financially embarrass a party but, instead, would aid a party in conducting discovery, the Court could make that information available.[4]

■ Throughout these proceedings it has been obvious that the foreign defendants are subject to this nation's securities laws. If they chose not to furnish certain information, they could be faced with a choice between revealing such information or having the lawful restraints of this Court continued against them.[5] Finally, after thorough review of all the *in camera* materials, I am satisfied that sufficient need has been demonstrated by the parties to keep these documents under seal and that none of the parties have been prejudiced by the orders of the Court.[6]

One other matter deserves brief comment at this point. Defendants have complained that the plaintiff target company has utilized this litigation to preserve the corporate life of its incumbent management, and has, with this purpose in mind, taken every opportunity to further delay these proceedings. *See, e. g.,* Transcript of Motion of November 21, 1973 at 11, 13–14, 18.

■ These arguments have not aided the Court to resolve the complex issues presented here. It is clear that Ronson, as the target corporation, has standing to sue the defendants for injunctive relief. Gulf & Western Indus., Inc. v. Great A. & P. Tea Co., Inc., 476 F.2d 687, 696 n. 14 (2d Cir. 1973). However, the legislative history of Section 14(e) reveals that Congress was hardly motivated by concern for incumbent management of the target company or intended the use of the statute to frustrate tender offers. The overriding purpose of this Section is the protection of the investing stockholders of the public so that they may have the benefit of full and fair disclosure of all material facts to make an informed investment decision. While counsel have zealously engaged in protecting their clients' rights in this high stakes struggle for corporate control of Ronson, this Court has not forgotten that Section 14(e) may not be diverted from its important purpose of protecting the public investor to be utilized solely for the benefit of incumbent management or control groups "jockeying" for corporate power. Nicholson File Company v. H. K. Porter Co., 341 F.Supp. 508, 520 (D.R.I.1972), aff'd, 482 F.2d 421, 423–425 (1st Cir. 1973); *see also* Butler Aviation Int'l, Inc. v. Comprehensive Designers, Inc., 425 F.2d 842, 844–845 (2d Cir. 1970).

To determine if permanent injunctive relief should be granted or if the preliminary injunction should be vacated,[7] the

---

4. *See, e.g.,* Deposition of La Russa and Bianchi of November 14, 1973 at 297. It is also interesting to note that one of plaintiff's experts on Italian Law, Giandomenico Magrone, was reluctant to discuss his client relationship with Fiat, a large Italian car manufacturer. Transcript of Hearing on January 4, 1974 at 158.

5. *Cf.* Fontaine v. Securities and Exchange Commission, 259 F.Supp. 880, 889–891 (D. P.R.1966); *see also* Deposition of La Russa and Bianchi of November 14, 1973 at 296–297; Transcript of Motion of November 21, 1973 at 29–30.

6. Plaintiff's documents concern U.S. Department of Defense contracts involving national security matters and other commercial information about Ronson's heliocopter subsidiary. Defendants' documents contain confidential commercial information.

7. The Court at this time does not rule upon any of plaintiff's claims for damages. It is important now only to resolve the claims for injunctive relief. Transcript of Motion of November 21, 1973 at 4–7, 18. Whether any damages can be or should be awarded to further the Congressional purposes of Section 14(e) may be determined at a later stage of these proceedings. For a discussion of the damages issue, *see, e.g.,* Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2d Cir. 1973), cert. denied, 414 U.S. 910, 94 S.Ct. 232, 38 L.Ed.2d 148 (Oct. 9, 1973); H. K. Porter Company, Inc. v. Nicholson File Company, 482 F.2d 421 (1st Cir. 1973). In these cases the of-

issue is whether the defendants, in the Restatement of the tender offer, have failed to disclose adequately or materially misrepresented the persons behind and the methods used to fund the offer, the effect of foreign laws on the offer, and the administrative obstacles under federal law to the offer.[8]

▪▪ Under Section 14(e) as in any civil suit, the burden falls upon the plaintiff to demonstrate by a preponderance of the evidence that it is entitled to permanent injunctive relief.[9] Neither the offeror nor the target company may omit or misrepresent a material fact to the stockholders of the target company.[10] The obligation for full and accurate disclosure of all material facts in the offer is "placed squarely" on the offeror and may not be shifted "to the shoulders of others"; otherwise the purposes of the Williams Act might be avoided by permitting the offeror to look to the target corporation to correct the deficiencies in the offer. Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 255 (2d Cir. 1973). Sonesta, however, does not shift any burden of proof in this litigation to the defendants. There the Court of Appeals merely indicated that the target company need not, in its communications to its stockholders, point out specific faults in the disclosures of the offeror. Sonesta, supra at 254–255. Under Section 14(e) the plaintiff target company, Ronson,

has the burden at trial of establishing that any alleged omissions or misrepresentations in the offer are material and that any of the tendering stockholders would probably not have tendered their shares if the alleged violations had not occurred. Gulf & Western, supra 476 F.2d at 696.

▪ On the other hand, the offeror clearly has the right to amend its offer to cure any defects,[11] and then rely upon those amendments to satsify the requirements of Section 14(e). Ronson, supra, 483 F.2d at 850, 852; Nicholson File Company, supra, 341 F.Supp. at 521. In this action defendants have amended their offer on several occasions. They now assert that the previous deficiencies in the offer have been corrected by the Restatement so that the injunction against them may be removed.

## II

The most important of plaintiff's allegations is that the defendants have failed to disclose adequately or materially misrepresented the methods used to fund and the persons behind the tender offer.

The Restatement describes how the twenty million dollars for the purchase of Ronson common stock was advanced to the account of the offeror, Liquifin. Restatement, paragraph 7(d) at 14–16. Briefly, at the direction of Liquigas, Liquimportex Aktiengesellschaft ("Li-

---

ferors sought damages against the target companies for the statements made by the target companies to their own stockholders in violation of Section 14(e).

8. Plaintiff does not press for permanent injunctive relief based upon violations of federal anti-trust statutes as alleged in the complaint. Transcript of Motion of November 21, 1973 at 12, 21.

9. See, Chris-Craft, supra 480 F.2d at 362, 364; cf. Gulf & Western Indus., Inc. v. Great A. & P. Tea Co., Inc., 476 F.2d 687, 689 (2d Cir. 1973).

10. "'A material fact is that which a reasonable investor would consider important in the making of his decision to tender or not to tender in response to Liquifin's offer. (Citing cases.) A material misrep-

resentation occurs when there is a substantial likelihood that the misstatement may have led a stockholder to tender his stock; whereas in the absence of the misrepresentation he would not have tendered. (Citing case.)'" Ronson, supra 483 F.2d at 848 quoting the opinion of this Court; see also Sonesta International Hotels Corp. v. Wellington Associates, 483 F.2d 247, 251 esp. n. 3 (2d Cir. 1973).

11. Under Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78m(d), it has been suggested that the offeror has a "continuing obligation" to remedy any errors. G.A.F. Corporation v. Milstein, 453 F.2d 709, 720–721 (2d Cir. 1971), cert. denied, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972).

quimportex") another wholly-owned subsidiary of Liquigas, sold a forty-nine percent interest in Liquipar S.A. ("Liquipar"), a subsidiary holding company for the Brazilian operations of Liquigas.[12] This minority interest in Liquipar was sold for cash to Capitalfin International Limited ("Capitalfin"), a Bahamian company, in May, 1973. The funds on deposit in defendant Franklin National Bank were acquired in this sale. The Restatement also describes the Liquigas-Liquipar Brazilian operations, and even explains that their capitalization came from Turner Anstalt, a Liechtenstein trust created by Holding Gasliq S.A., a wholly-owned Swiss subsidiary of Liquigas. Testimony at trial, extensive depositions and production of documents demonstrate that the funds for this tender offer were in fact provided through the Liquimportex to Capitalfin sale of Liquipar stock.[13]

The only indication that perhaps the funds for the tender offer were raised by another method is the theory that these funds are related to or commingled with a fifty million dollar unsecured loan by several major international banks to Liquigas Jersey (Holdings) Limited, a wholly-owned Liquigas subsidiary. This loan for additional capital for Liquigas' South American operations was finalized in August, 1973. Defendant Marfuggi admitted in his deposition on October 1, 1973 that negotiations for this loan had commenced prior to the tender offer. Plaintiff speculates that perhaps the funds on deposit did not originate from an arm's length sale with Capitalfin, but by a sale dependent upon the concurrent financing arrangements of the loan, especially since Capitalfin participated in both the loan and the sale of Liquipar stock.

The record, however, does not support this theory. The loan occurred well after Capitalfin purchased the interest in Liquipar and after the twenty million dollars to pay for the tendered shares were deposited in defendant Franklin National Bank. The depositions of Ursini, Marfuggi and Bianchi, as well as the documents produced,[14] all indicate that this loan was completely unrelated to the sale of Liquipar stock to Capitalfin.

■ Because this loan is not related to the source of funds for the tender offer, Section 14(e) is not violated if the defendants omit a description of this transaction in the offer. It is unnecessary to discuss in the offer an unrelated, ordinary business transaction between the offeror's parent, a large international company, and one of its subsidiaries.

■ While plaintiff may have raised several "fascinating" business questions about the transactions which generated the funds to pay for Ronson shares, it has failed to prove that the Restatement misrepresents or omits material *facts* concerning these transactions. The business considerations which motivated the defendants to raise the funds for the offer in this particular manner may be matters for speculation and theory, but there is not sufficient evidence on the record to conclude that these transactions took place other than as described in the Restatement.[15] Having failed to meet its burden of proof, plaintiff is not entitled to permanent injunctive relief

---

12. At page 10 of the Restatement, Liquipar has been identified incorrectly as a Liechtenstein corporation. Apparently Liquipar is a Brazilian company, and should be properly identified in the tender offer.

13. *See, e.g.*, Transcript of Hearing on January 3, 1973 at 235–240 (Defendants' summary of the record relating to this transaction).

14. The parties, except for defendants Franklin National Bank and Franklin New York Corporation, entered into a stipulation (hereinafter referred to as "Stipulation of Record") to include certain items in the record for the hearing on a permanent injunction.

15. Defendants contend that transactions such as the Liquipar minority interest stock sale can be explained as simply a bargain struck between a seller and a willing buyer. Transcript of Hearing on January 3, 1974 at 189–200, esp. 195.

on its claims relating to the source of funds issue.

▆▆▆ Because the offeror, Liquifin, is a wholly-owned subsidiary of Liquigas, it is important under the Williams Act for the Ronson stockholders to know who controls Liquigas, a large Italian company with two hundred fifty million outstanding shares of fully voting stock.[16] The Restatement identifies defendant Raffaele Ursini, the managing director of Liquigas and a member of its board of directors, as "the person in control of Liquigas". Restatement at 11. Plaintiff contends that Ursini is not in control, or alternatively, that the description of his control in the Restatement is misleading.

▆▆▆ The record in this case inevitably leads to the conclusion that only defendant Ursini controls Liquigas. As the managing director of Liquigas and most of its subsidiaries, Ursini makes the important business decisions for the Liquigas group nearly every day. He is the largest Liquigas stockholder with control over ninety million shares of common stock or thirty-six percent of the outstanding common shares of Liquigas. The Restatement fully discloses that these shares are recorded as owned by Servizio Italia del Banca Nazionale del Lavoro ("Servizio Italia"), an Italian fiduciary company which holds these shares for the benefit of Ursini in a capacity similar to an American brokerage firm holding stock in a "street name account".[17] Servizio Italia is a subsidiary of Banca Nazionale del Lavoro, Italy's largest bank.

The written agreement of March 21, 1973 between Servizio Italia and Ursini as well as the certificate of Servizio Italia corroborate the disclosures in the Restatement.[18] These documents establish the fiduciary relationship whereby Servizio is to hold the shares for Ursini, vote them according to his instructions and have them registered in his name whenever he so directs. The record also establishes that these shares are free from any liens [19] and that Servizio has

---

16. Liquigas has issued fifty million shares of preferred stock with voting rights limited to extraordinary stockholders' meetings. These details are explained in the Restatement, paragraph 7(a) at page 10, note 5. Because of the limited voting rights, ownership of these preferred shares could hardly provide an effective means to control Liquigas. The owners of more than five percent of these shares appear to be Montecatini Edison (18.95%), Credito Italiano (8.50%) and Banca C. Steinhauslin (7.74%). Liquigas has also issued debentures which are convertible into preferred shares after 1979. Marfuggi Deposition June 12, 1973 at 183; Marfuggi Deposition October 1, 1973 at 35; Item 8, Doc. No. 2 on page 11 of the Stipulation of Record. There is no need to discuss these debentures in the Restatement.

17. Defendant Ursini's ninety million shares were represented by 4,866 separate certificates in May, 1973. Apparently inquiries were made whether a smaller number of certificates could replace the 4,866 certificates. Unverified answers to interrogatories of Liquigas, Item 6 on page 24 of the Stipulation of Record filed on January 2, 1974. The verified answers to these interrogatories of Luigi Finazzi were submitted during the course of the hearing. See also Documents produced by Defendants on December

3, 1973, Doc. Nos. 11–16, Item 12 on page 24 of the Stipulation of Record.

The office of administrative services of Liquigas evidently handled the request in the ordinary course of business. On June 27, 1973 the old certificates were burned and replaced by thirteen new certificates. Doc. No. 16, *supra* and Exhibit DL–1 in Evidence; Transcript of Hearing on January 2, 1974 at 47–48. From these circumstances plaintiff contends hypothetically that Ursini is "covering up" the persons from whom he obtained the shares by destroying the endorsements which would appear on the old certificates and thus preventing disclosure of the identity of the person "secretly" in control of his shares and Liquigas.

18. Deposition of Ursini in June 1973, item 13 on page 6 of the Stipulation of Record, Exhibits M–141 and M–142; Transcript of Hearing on January 3, 1974 at 225–227 (Defendants' summary).

19. Deposition of Ursini in June, 1973, item 13 on page 6 of the Stipulation of Record, Exhibit M–142. The parties dispute the translation of the Italian terms into English as "freely withdrawable deposit" or "free from any lien". Deposition of Ursini in November 1973, item 17 on page 6 of the Stipulation of Record, at 445–451.

in the past and will continue in the future to vote these shares in accordance with Ursini's instructions which he has always given.[20]

The Restatement also reveals that while Ursini has agreed to sell fifteen million of these shares to a third party, he will retain the voting rights to these shares and the right of first refusal should the purchaser propose to sell them.[21]

Nevertheless plaintiff urges that "suspicious" facts in the record "counterindicate" that defendant Ursini does not control his stock nor Liquigas. Ronson has named several persons and entities that it claims could be in control of Liquigas.[22] Plaintiff also claims that because Ursini has not affirmatively proved how he paid for each of his ninety million Liquigas shares, the money to obtain this stock must have come from a "secret" person who continues to dominate Ursini and Liquigas.[23]

However, the record as a whole has not established Ronson's suspicions and theories as provable facts. The preponderance of the evidence clearly demonstrates that defendant Ursini controls Liquigas. In fact, this tender offer, a very important business transaction to any corporation such as Liquigas, has been dominated in every crucial aspect by Ursini. Even Ronson's counsel has admitted that there is "no doubt" that Ursini "is the key man" in this tender offer and that the other witnesses consider him as "the guy who knows" about most of the key issues.[24] It may be interesting that Ursini has risen from a salaried employee of Liquigas to its chief executive and largest stockholder. In view of his role in this offer and other significant transactions of Liquigas, it is not that important how he attained this control position but only whether he does in fact control Liquigas as the offer states.[25] Even if some "secret" person aided him in obtaining ninety million shares of Liquigas, the evidence shows that Ursini now controls these shares and Liquigas.

Other entities were mentioned during the proceedings for preliminary injunctive relief as possible control persons of Liquigas. One such company is Montecatini `Edison S.p.A. ("Montedison"), which owns twenty-two percent of Liquigas' common stock. Owning less shares than Ursini, it would be difficult for Montedison to control Liquigas. The record indicates that Montedison has not attempted to influence the operations of Liquigas nor has it attempted to seek any representation on the Liquigas Board of Directors.[26] The Restatement explains these facts as well as the ownership of Montedison's stock. Restatement at 12. While approximately eighty percent of Montedison's stock is owned by private enterprises and the general public, Ente Nazionale Idrocarburi ("ENI") and Istituto per la Reconstruzione ("IRI"), both Italian governmental authorities, own approximately fifteen and five percent respectively. This ownership is acknowledged. Restatement at 12.

The Restatement also reveals that the Italian Government controls ENI, IRI and Banca Nazionale del Lavoro, the owner of eighty percent of Servizio Ital-

20. Transcript of Hearing on January 3, 1974 at 224–225 (Defendants' summary).

21. Restatement at 11. The identity of the purchaser has been revealed to the Court *in camera* by the affidavit of defendant Ursini dated November 5, 1973.

22. Transcript of Hearing of January 3, 1974 at 173–174.

23. *Id.* at 178–179.

24. Transcript of Motion of November 21, 1973 at 15–16. Defendant Ursini has been deposed on two separate occasions for a total of six days. *Id.*, at 17; Items 13 and 17 on page 6 of the Stipulation of Record.

25. Deposition of La Russa and Bianchi of November 14, 1973, Items 15 and 16 on page 6 of the Stipulation of Record, at 300–301.

26. Deposition of Marfuggi on June 12, 1973, Item 7 on page 6 of the Stipulation of Record, at 173–174; Deposition of Ursini on November 16, 1973, Item 17 on page 6 of the Stipulation of Record, at 571.

ia, the fiduciary holder of Ursini's Liquigas shares. Neither ENI, IRI nor the Italian Government owns any Liquigas stock. Restatement at 12. The Restatement explains that ENI, Montedison and Banca Nazionale del Lavoro are three of four groups owning Capitalfin, the purchaser of the Liquipar stock from which the funds for the tender offer originated. The Restatement declares that Capitalfin does not own any Liquigas stock, nor does Liquigas own any Capitalfin stock.

These intricate relationships have been fully revealed to the Ronson stockholders. The record does not provide any factual basis from which to conclude that any of these entities control Liquigas. Thus, the Restatement does not violate Section 14(e) with respect to these disclosures.

Another claim of Ronson is that Societa General Immobiliare ("Immobiliare") could be in control of Liquigas because Liquigas has guaranteed payment of nearly sixty million dollars of Manifattura Cermamica Pozzi S.p.A. ("Pozzi") debts to Immobiliare. The theory of this claim is that Pozzi will not be able to meet these obligations and when Liquigas is called upon and unable to perform its guarantees, Immobiliare will become the largest creditor of Liquigas and in a position to control it.

■ The Williams Act requires only that the person in control of the offeror at the time of the offer be identified. During the preliminary stages of this suit, it was necessary for further inquiry into the Pozzi transactions because if, as a result of these substantial guarantees, Immobiliare would be able in the near future to control Liquigas, that would be a material fact to a stockholder deciding whether to tender his

Ronson shares to a wholly owned subsidiary of Liquigas.[27]

The defendants have described the basic facts concerning the guarantee of Pozzi debts to Immobiliare. These guarantees are related to Liquigas' purchase of Pozzi's petro-chemical business. Restatement at 12. The record supports the description in the Restatement of these transactions.[28]

Ronson argues that certain "interesting unanswered questions" about the Pozzi transactions justify permanent injunctive relief. Yet after trial these theoretical questions remain speculative and unproven. At first plaintiff seemed to complain that Liquigas had "mortgaged away" its future by guaranteeing such large debts of a company like Pozzi, and then plaintiff attacked the transactions as too "good" for Liquigas when certain stockholder suits were filed in Italy.

After a review of the evidence this Court concludes that the disclosures concerning the Liquigas-Pozzi transactions do not violate Section 14(e). The important facts are revealed, and the Ronson stockholders have been alerted that perhaps at some point in the future Immobiliare may influence or even control Liquigas if these debts of Pozzi can not be guaranteed by Liquigas.[29]

Finally, Ronson also asserts that defendant Michele Sindona controls Liquigas because he is the "secret" beneficial owner of Ursini's Liquigas shares. Sindona became involved in this tender offer as a personal and business friend of Ursini. Ursini consulted with Sindona for guidance in making the tender offer in this country. Sindona introduced Ursini to counsel and investment bankers as well as providing his offices for meetings concerning the offer. All of these dealings are candidly revealed to

27. Ronson Corp. v. Liquifin Aktiengesellschaft, Civ. No. 785-73, at 17-18 (D.N.J. July 3, 1973) (Findings of Fact and Conclusions of Law).

28. *See, e.g.*, Transcript of Hearing on January 3, 1974 at 228-235 (Defendants' summary).

29. Also disclosed is the fact that payments for Liquigas' obligations are not due for three years. They are payable over an additional seven year period. Restatement at 13.

the Ronson stockholders. Restatement at 13.

Sindona is also involved in this tender offer through his various business interests. He owns approximately one third of the stock of Immobiliare through his wholly-owned subsidiary, Fasco. Through Fasco he owns 21.6% of the stock of defendant Franklin New York Corporation which wholly owns defendant Franklin National Bank, the depository bank for the funds in this tender offer. Sindona claims that he has no direct or indirect stock interest in, nor is he a director or officer of, Liquigas. Sindona will not receive any compensation from Liquigas for his assistance in the offer. All of this information is provided to Ronson stockholders. Restatement at 13–14.

Ronson's claims against Sindona do not rely upon the factual proofs in the record, but instead, depend upon hypothetical inferences allegedly so convincing in logic that they overwhelm the evidence which clearly shows that Ursini controls Liquigas.[30] Ronson relies upon Ursini's exercise of a "call" in early 1973 over part of one hundred twenty-five million Liquigas shares which were held beneficially by an Italian entity known as Coil Finanzieria. By exercising this "call", Ursini obtained his ninety million shares of Liquigas stock. Ronson suggests that Coil Financiere,

the alleged Swiss parent of Coil Finanzieria, was indirectly controlled by Sindona through his interest in an entity described only as "Finabank". Ronson then concludes that Sindona must be the "secret" person in control of Liquigas since he supplied Ursini with the funds for Ursini's exercise of the "call".

The record does not support Ronson's theories. First, Sindona has sworn by affidavit that he never had any interest, direct or indirect, in Coil Financiere, and more importantly, that he never had any interest, direct or indirect, in any of the ninety million shares registered in the name of Servizio Italia nor any other shares of Liquigas. Sindona also denies that he provided Ursini with the funds to buy Liquigas shares.[31] Second, it would not be logical or prudent for a person such as Sindona to part with thirty-two million dollars for control of Liquigas shares through a "front" man such as Ursini without a written agreement and/or a proper recording of his interest or lien on the stock ledger and certificates.[32] Indeed plaintiff's own expert conceded that he would not advise a client of his to rely upon only an oral understanding to protect such a valuable interest in the stock against third parties.[33] Finally, if Sindona were the "secret" person in control, it would be illogical that he take part in the offer by introducing counsel and conducting meetings in his offices. Such actions

---

30. Apparently Ronson is claiming elsewhere that one Vincenzo Cozzaniga instead of Sindona "secretly" controls Liquigas. Ronson v. Liquifin Aktiengesellschaft, 73 Civ. 4026 (S.D.N.Y.), Exhibit DL–3 in Evidence; Transcript of Hearing on January 3, 1974 at 181–183, 210. It should also be noted that two other exhibits were admitted into evidence over plaintiff's objection. Transcript of Hearing on January 3, 1974 at 211–212. Since these exhibits have not been properly authenticated they have not been relied upon in any way by the Court.

31. Sindona's affidavit of December 13, 1973, Item 40 on page 5 of the Stipulation of Record. Ronson probably could have examined Sindona about the Coil entities when deposing him in June, 1973 because a few days later, when deposing Ursini, counsel for Ronson inquired about Coil Financiere, a

Swiss company. Deposition of Ursini, June 22, 1973, Item 13 on page 6 of the Stipulation of Record at 96–106; see also, Transcript of Hearing on January 3, 1974 at 222–224 (Defendants' summary).

32. Discovery has not produced any writing which suggests Sindona has agreed that Ursini shall act as his "front" man in controlling Liquigas. The stock certificates of Ursini and the stock ledger of Liquigas do not reveal any lien or interest in Ursini's shares. See note 17, infra. Plaintiff's expert has had several opportunities to inspect the Liquigas stock ledgers since he purchased shares of Liquigas in the summer of 1973. Transcript of Hearing on January 2, 1974 at 34–36.

33. Transcript of Hearing on January 2, 1974 at 145–152, esp. 146, 151.

could hardly be effective to protect any alleged "secret" control of Liquigas.

Having reviewed all the evidence and the Restatement, the plaintiff has failed to establish that Sindona is a control person of Liquigas. The evidence supports the conclusion that Ursini, not Sindona, controls Liquigas. Ronson's hypotheses do not logically suggest that Sindona is in control and certainly do not overcome the evidence supporting Ursini's claim of control. Accordingly, it is the opinion of this Court that plaintiff has failed to establish a violation of Section 14(e) with respect to its allegations that Sindona or any persons or entities other than Ursini control Liquigas.

### III

An important claim by Ronson is that the defendants have failed to disclose adequately or have misrepresented the foreign law or legal controls which may apply to the defendants in the event the tender offer is successfully consummated. The law applicable to such a claim is found in Judge Pierce's excellent opinion in General Host Corporation v. Triumph American, Inc., 359 F.Supp. 749, 758 (S.D.N.Y.1973) where the court stated that foreign legal controls

> . . . particularly when they differ in extent and kind from controls the U. S. investor has come to expect from the U. S. Government in relation to domestic corporations, are matters which should be called to the attention of shareholders in a tender offer.

In this case the defendants have disclosed the foreign law problems. Restatement at 17–18. The Restatement describes each contested point of foreign law and the opinions of counsel for the defendants and counsel for Ronson. The parties have attempted to persuade this Court of the merit of their respective opinions on the application of Italian and Swiss law by a "battle of legal experts".

It should be obvious that this Court need not decide points of Italian or Swiss law, but only whether these foreign legal questions have been fully and fairly called to the attention of the Ronson stockholders. After reviewing the Restatement and the evidence, it is the opinion of this Court that the defendants have complied with the Williams Act with respect to these questions of foreign law.

For example, Ronson contends that the defendants, under Italian corporate law, may not invest in Liquifin and Ronson without prior approval from the Italian Ministry of Foreign Trade. Restatement at 17. The Restatement clearly describes that in the opinion of Ronson's counsel, such approvals "would be difficult to obtain". The Restatement then explains that the opinion of Liquigas' counsel is to the contrary. In their view, such prior approvals are unnecessary because "these investments were from sources outside of Italy" and only apply to Italian residents.

Another contention of Ronson is that the effect of a United States withholding tax together with an Italian income tax would cause the defendants to hold Ronson dividends "to a minimum" in order to minimize taxes. In the Restatement, the defendants admit that no consideration has been given to any change in Ronson's dividend policy, but that if they are "in a position to control such policy . . . all appropriate factors" will be considered, including the fiduciary obligations to minority stockholders of Ronson. Restatement at 18.

In the next paragraph, the dispute over the effect of Italian and Swiss tax law on the sale by Liquimportex of the forty-nine percent interest in Liquipar to Capitalfin is discussed. Again the Restatement points out that Ronson's counsel believes that substantial foreign taxes must be imposed on this transaction while Liquigas' counsel believes that these taxes do not apply. However, the Restatement clearly states that "any taxes which may be found to be due and owing will be paid". Restatement at 18. Presumably, although it is not so stated, this declaration about this particular tax

problem could apply to the other tax matters as well.

In view of these full revelations of the legal opinions of counsel for both sides and the factual bases for these opinions on disputed points of foreign law, it cannot be said that the Ronson stockholders have been denied information required by the Williams Act. Also, the Restatement discloses, as best it can at this time, the offeror's intentions to deal with these legal problems should the tender offer be consummated. Therefore, the Court concludes that the defendants have not violated Section 14(e) in the Restatement with respect to applicable foreign legal controls.[34]

## IV

Another claim of Ronson is that the defendants have failed to disclose adequately the substantial questions of federal administrative law which apply to this tender offer. In the preliminary stages of this litigation, the tender offer misleadingly treated the problems arising under the Federal Aviation Act and the Federal Communications Act as if they were probably subject to resolution without divestiture of Ronson's helicopter and defense subsidiaries. *Ronson, supra,* 483 F.2d at 850. When reviewing this claim, the Court of Appeals stated:

. . . we agree with defendants that clearances from the several administrative agencies involved need not be secured prior to a final tender offer . . . 483 F.2d 850–851.

Plaintiff now argues that when the Court of Appeals used the term "tender offer" it meant only that a final solicitation of shares could occur prior to the completion of the administrative pro-

ceedings. Plaintiff argues that the Court of Appeals did not authorize consummation of the offer before final resolution of the administrative legal questions. Plaintiff's view is supported by the suggestion in that opinion that courts should be careful to avoid consummation of a tender offer if it would become difficult to "unscramble" the corporate "eggs".

Although the opinion of the Court of Appeals could possibly be construed as plaintiff suggests, this Court does not interpret the term "tender offer" so narrowly. In the very next paragraph, the Court of Appeals applied the language of *Sonesta, supra* to this case by stating

'preliminary relief does not, in assuring that the offer will be lawfully made, sacrifice the legitimate desires of shareholders to accept the offer. *If the offeror is subsequently vindicated after a trial on the merits, the offer may be renewed.* Thus, in the normal situation, when it appears likely that the offer may contain materially misleading statements or omissions as made, the interest of the shareholders and of the public in full disclosure of relevant circumstances renders *preliminary injunctive relief an appropriate method of remedying the deficiencies in disclosure before the offer is consummated.*' (emphasis supplied). 483 F.2d at 851.

When these two paragraphs are read together it seems fairly evident that the Court of Appeals did not intend for this Court to await the final administrative decisions before determining whether to continue or remove the restraints on this offer. If the offeror is vindicated after a trial on the merits or the deficiencies in the offer are corrected,[35] the tender offer may pro-

---

34. Plaintiff has also raised the spectre of certain Italian stockholder suits in the Italian courts. These foreign suits which, at this time, apparently have not proceeded beyond filing of complaints, seem remote and insignificant to the material facts of this tender offer and need not be discussed in

the offer. In fact, defendants offered some evidence to show that several of these suits have already been withdrawn. Transcript of Hearing on January 3, 1974 at 152–157, 201.

35. *Sonesta, supra* at 255. *Ronson,* Opinion of August 15, 1973 at 6–7.

ceed to consummation provided that removal of a preliminary injunction in a particular case would further the Congressional purposes of the Williams Act.[36]

In this case the federal administrative legal problems are discussed. Restatement at 3. The Restatement fully sets forth the facts and intentions of the offeror concerning its proposal to comply with the Federal Aviation Act by means of a trust agreement with the First National Bank of Washington, D. C. as the trustee. The Restatement discloses the status of the proceedings before the CAB regarding Ronson Heliocopters, .Inc. and the total sales and net losses of this subsidiary from the final quarter of 1965 through the first five months of 1973. The Restatement also declares that the outcome of the administrative bodies are not predictable, and that if the trust arrangement is not approved, certain Ronson subsidiaries may be disposed of at the "best terms available". Restatement at 5 n. 1, 6 n. 2, 7.

Similarly, the Restatement informs the stockholders of the potential effects on Ronson if the FCC does not grant the approvals needed to continue operation of the various Ronson radios. Restatement at 8.

The Restatement candidly discusses facility security clearances which are necessary to the Ronson hydraulics subsidiaries in their business with the United States Department of Defense. Also provided is the sales and pre-tax income of the hydraulics subsidiaries as indicated by the Court of Appeals. *Ronson, supra*, 483 F.2d at 851; Restatement at 10. The offeror warns that if the necessary facility security clearances cannot be obtained from the Defense Depart-

ment, the defense business "would have to be terminated or the Hydraulics Subsidiaries might have to be sold".

 After a full review of all the evidence and the Restatement, the disclosures concerning the federal administrative legal problems do not violate Section 14(e). The intentions of the offeror and the facts behind those intentions have been revealed. Of course the defendants have a "continuing obligation" to insure that the Ronson stockholders are aware of the important administrative developments, if any, since September, 1973.

V

Certain other defendants also seek relief. Defendants Franklin New York Corporation and Franklin National Bank move to dismiss the complaint for failure to state a claim upon which relief can be granted and to dismiss the complaint on the merits. Previously these defendants moved to dismiss the action for lack of venue under the National Bank Act, 12 U.S.C. Section 94. That motion as well as the motion at the preliminary stage to dismiss the complaint for failure to state a cause of action was denied by this Court and affirmed by the Court of Appeals. Ronson Corporation v. Liquifin Aktiengesellschaft, 483 F.2d 852, 855 (3d Cir. 1973).

 These defendants raise compelling arguments in their brief for dismissal based upon deficiencies in the pleadings. However, having examined the proofs in support of plaintiff's claims for permanent injunctive relief, there is no evidence of any wrongdoing by either Franklin New York Corporation or Franklin National Bank that would justify permanent injunctive relief against

---

36. Corenco Corp. v. Schiavone & Sons, Inc., 488 F.2d 207 (2d Cir. October 26, 1973) suggests in dicta that even if the deficiencies in the tender offer are corrected, permanent injunctive relief may still be an appropriate remedy to insure future compliance with the Williams Act. Such a drastic remedy should be utilized only where the offeror willfully attempted to withhold information from the target company's stockholders. However,

them.[37] Franklin National Bank has acted merely as a depository for the funds to pay for the tendered Ronson shares. As for the interest of defendant Sindona in these defendants, even if Sindona were subject to permanent injunctive relief, plaintiff has not demonstrated that either of these defendants should be enjoined solely because Sindona is a shareholder indirectly in Franklin New York Corporation. There is no evidence that these defendants have conspired with Sindona for any unlawful purpose. Consequently, there are no grounds for permanent injunctive relief against defendants Franklin National Bank and Franklin New York Corporation.

These defendants also move that plaintiff's claims for damages be dismissed at this time. As previously indicated, the Court at this stage is only concerned with the claims for injunctive relief and not with any claims for damages.[38] Accordingly, the motion of these defendants to dismiss the claims for damages will be denied without prejudice to renew at a later stage of these proceedings.

The evidence also fails to justify any further injunctive relief against defendants D. F. King & Company, Servizio Italia, Kuhn, Loeb & Company, and Philip Marfuggi.

The evidence in this case demonstrates that plaintiff Ronson Corporation has failed to prove that it is entitled to permanent injunctive relief under Section 14(e). The preponderance of the evidence shows that the Restatement of the tender offer fully informs the Ronson stockholders of the material facts without omission or misrepresentation. The Restatement adequately discloses the persons behind and the methods used to fund the offer, the effect of foreign laws on the offer, and the federal administrative legal problems involved in the offer. Consequently, not only should plaintiff's prayer for permanent injunctive relief be denied, but the preliminary restraints now in effect against the offer should be dissolved.

Of course when these restraints are removed by order of this Court, the defendants must show that they have corrected the minor discrepancies in the Restatement as it is now written. The passages referring to these Court proceedings and the administrative proceedings must be revised to reflect the significant developments since September, 1973. The figures relating to the amount of shares to be purchased and the price per share must be adjusted throughout the Restatement in accordance with amendment to the 13D Schedule filed with the SEC. The proper identification of the Liquipar Company must be included as well as the correction of footnote 8 of the Restatement which improperly refers to "preferred" shares of Pozzi.

Accordingly, plaintiff's application for permanent injunctive relief must be denied, and defendants' motion to vacate the preliminary injunction must be granted. Counsel, with notice, shall submit an order immediately.

The foregoing opinion shall constitute this Court's findings of fact and conclusions of law under F.R.Civ.P. 52(a).

the district court has the equitable power to expressly limit the duration of a permanent injunction until the defendant offerors make full disclosures. *Id.*, at 214–215.

37. *See* Transcript of Hearing on January 3, 1974 at 218.

38. *See* note 7 *infra*.